COMMONWEALTH of Pennsylvania, in the Superior Court of Pennsylvania, Appellee

v.

Richard M. KEARNEY, Appellant.

Commonwealth of Pennsylvania, in the Superior Court of Pennsylvania, Appellee

v.

Richard Muliek Kearney, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 29, 2014.

Filed May 6, 2014.

---

Elizabeth A. Clark, Greencastle, for appellant.

Travis L. Kendall, Assistant District Attorney, McConnellsburg, for Commonwealth, appellee.

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.*

OPINION BY PLATT, J.

Appellant, Richard Muliek Kearney, appeals from the judgments of sentence in these four inter-related cases, which were

* Retired Senior Judge assigned to the Superior Court.

consolidated *sua sponte* by this Court.[1] Appellant challenges the trial judge's decision not to recuse herself, two photo arrays and other identifications, and the sufficiency of the evidence. We affirm.

This is a complicated and convoluted set of cases. The complications were further exacerbated procedurally by Appellant's substantial, documented disagreements over strategy, tactics, and legal issues (as evidenced in part by his complaints to the Disciplinary Board)[2] with at least four, if not all, of his appointed counsel.[3] In addition, he persistently attempted to engage in hybrid representation despite admonitions by the court to desist. He repeatedly vacillated over procedural issues such as election of a jury or non-jury trial, and whether defense counsel should represent him directly or serve only as back-up counsel. Last, but certainly not least, he engaged in confrontational and obstreperous conduct directly toward the presiding trial judge. We summarize the facts most relevant to the issues Appellant has raised in this appeal.

During the months of January and February, 2011 Jacob Colby Mellott lived at the Cardinal Glen(n) Terrace Apartments in McConnellsburg, Fulton County.[4] (*See* N.T. Trial No. 211 of 2011; 223 of 2011, 10/11/12, at 10). His cousin, Skylar Vincenti, was living with him. (*See id.* at 13). Mellott and Vincenti were acquainted with Travis Smith, who lived in the apartment below them. (*See id.* at 37). Smith owned a mountain cabin in Ayr Township, also in Fulton County, but testified that sometimes, including the period at issue here, he rented an apartment for the winter months because the cabin had no running water or electricity and the only heat was a woodstove. (*See id.* at 36). Smith was renting a room in his apartment to Appellant, whom he knew as "Benny," and a friend of Appellant.[5] (*See id.* at 38).

When Mellott and Appellant woke on the morning of February 2, 2011 in Mellott's apartment, they realized that Appellant's book bag was missing. The book bag contained cocaine, marijuana, over a hundred Percocet tablets, and Vicodin. (*See* Trial Ct. Op., 5/07/13, at 26 (citing N.T. Trial, 10/11/12, at 41)). Vincenti testified at trial that he stole the book bag, left the apartment with Travis Smith, and went to Smith's mountain cabin to use the drugs. (*See* N.T. Trial, 10/11/12, at 108, 115).

That same day, Appellant and Mellott arrived at Smith's cabin.[6] They knocked down the door and entered. Smith retreated upstairs. Appellant, who was

---

1. (*See* Order, *per curiam*, 2/4/13). The trial court explains that Appellant was arraigned on November 8, 2011 on all four criminal cases, which were investigated simultaneously by the Pennsylvania State Police. (*See* Trial Court Opinion, (Nos. CR 211–2011, CR 223–2011), 5/07/13, at 3).

2. (*See, e.g.,* Letter from the Office of Disciplinary Counsel, The Disciplinary Board of the Supreme Court of Pennsylvania, to Richard M. Kearney, October 7, 2011, dismissing Appellant's complaint against Kristin Diller Nicklas, Esq.).

3. Appellant was represented at one time or another by Kristin Nicklas, Esq., David Bres-

chi, Esq., Michael Palermo, Esq., Brian O. Williams, Esq., and current appellate counsel, Elizabeth A. Clark, Esq.

4. Both alternative spellings of "Glen" are found in the record.

5. All witnesses refer to Appellant as "Benny" or "B." (*See* Appellant's Brief, at 18 n. 4). Appellant disputes his identification as Benny or B. (*See id.*).

6. There was inconsistent testimony as to whether or not Vincenti had already left by the time Mellott and Appellant arrived.

brandishing a handgun, demanded the return of his drugs. Smith fired a crossbow down at the intruders. They left. (*See* Trial Ct. Op., 5/07/13, at 26 (citing N.T. Trial, 10/11/12, at 41)).

Several months later, on the evening of June 29, 2011, around dusk, at the same cabin, while Smith was on the front porch with Vicki (Smalley) Vance, they saw the truck of Vance's father approach. (*See id.* at 32 (citing N.T. Trial, 10/11/12, at 45[–46])). Smith had a "bad feeling," went inside, upstairs, and picked up a machete, hatchet, and an axe. (*Id.*). Appellant got out of the truck, came inside, pointed a gun at Smith and demanded money for his drugs. Smith threw the axe down. Appellant fled.

Later on the same evening of June 29, 2011, between 11:30 p.m. and midnight, Tabetha Lynn Mellott[7] received a telephone call from a friend, Justin Smalley.[8] (*See* N.T. Hearing, 4/02/12, at 16–17). Smalley asked Ms. Mellott to put him and two friends up for the night. Despite the lateness of the hour, Ms. Mellott drove out to the farm of Smalley's grandfather, picked up Smalley, his two friends, and a young woman. The two friends were Appellant and a cohort, later his co-defendant, Marc Dorce. They all returned to Mellott's home and eventually went to sleep around 2 AM.

On the morning of June 30, when Ms. Mellott woke up, Smalley and the woman had already left. Ms. Mellott spoke with Appellant and Dorce. After forty-five minutes of conversation, Appellant went to the bathroom. When he returned he had a handgun and demanded repeatedly to know where his "shit" was. (N.T. Hearing, 4/02/12, at 22). Ms. Mellott replied she did not know what he was talking about. Appellant went to the bedroom where Ms. Mellott's friend, Joshua Weaver, was still sleeping. Appellant woke Weaver, put the handgun in his face and again demanded to know where his "shit" was. He also saw a shotgun under the bed and took it.

Appellant ordered Ms. Mellott to strip, turn around, squat, and cough in a search for his drugs. She complied. (*See* N.T. Hearing, 4/02/12, at 23). Afterward, Dorce went to the bathroom and summoned Ms. Mellott to join him. Eventually, in the bathroom cabinet, they found a sandwich bag full of other smaller baggies containing a white substance.[9] They returned to the living room. Ms. Mellott sat on the couch at gunpoint for several hours while Appellant and Dorce made numerous phone calls in an effort to find someone to pick them up and give them a ride. (*See id.* at 24).

Around seven to eight in the evening of the same day, June 30, 2011, Ashley Leeann Ramp, driving a rented silver HHR station wagon she had been using to move her belongings out of her house, saw Appellant and Dorce on the street in McConnellsburg. Ms. Ramp knew Appellant and Dorce because they had been living with her and her family for several weeks that June, prior to the move, again at the request of Justin Smalley. (*See* N.T. Hearing, 4/09/12, at 53; *see also* Trial

---

7. Ms. Mellott's given name is spelled both as Tabitha and Tabetha in the record before us.

8. Justin Smalley is the nephew of Vicki Smalley Vance.

9. Because the Commonwealth did not have a laboratory report conclusively establishing that the baggies found by Ms. Mellott and Dorce in her bathroom contained a controlled substance, the court ruled that there should be no reference to the white substances as drugs during the trial. (*See Trial Court Opinion*, 1/16/13, at 13).

Ct. Op., 1/16/13, at 6–7). Appellant and Dorce asked Ms. Ramp for a ride. She agreed.

Once inside the vehicle, Appellant put his arm around Ms. Ramp's neck and a pistol to the right side of her head. (*See* N.T. Hearing, 4/09/12, at 59; *see also* Trial Ct. Op., 1/16/13, at 7). Appellant threatened to kill her if she did not get out of the car. (*See* Trial Ct. Op., 1/16/13, at 7). Ms. Ramp complied.

Ms. Ramp did not call the police. She did call Enterprise Rental Car, giving equivocal explanations about the delay in the return of the vehicle. Eventually the car was returned to Enterprise. While she was retrieving her personal belongings Ms. Ramp found the handgun. She showed it to Enterprise employee, Eric Light, as proof of her statement that the car had been stolen. Mr. Light called the police. (*See* Trial Ct. Op., 1/16/13, at 8).

Following up a Wal–Mart receipt found in the vehicle, Pennsylvania State Police obtained Wal–Mart surveillance video showing Appellant, Dorce, and an unidentified female arriving at the store in a silver station wagon, making purchases, and returning to the silver vehicle. At the same time, the State Police were looking for Appellant as a result of fugitive warrants from Maryland. Eventually, they were able to identify Appellant to be the man known as "Benny" or "B," through the JNET driver's license database.

Appellant was subsequently charged with a variety of offenses, including simple assault, false imprisonment, recklessly endangering another person, robbery of a motor vehicle, theft by unlawful taking, and violations of the Uniform Firearms Act.[10]

On April 9, 2012, prior to the first two trials, the court denied Appellant's motion to quash or dismiss the informations based on his challenge to the witnesses' identification. (*See* Order, 4/17/12, at 1–2). On April 25, 2012, the court denied Appellant's omnibus pre-trial motion, including, *inter alia,* Appellant's challenge to the two eight-photograph black-and-white photo arrays developed by the Pennsylvania State Police which were shown to Ashley Ramp and Tabetha Mellott. (*See* Order, 4/26/12, at 2–4).

Case number 227 of 2011 (false imprisonment of Tabetha Mellott, *etc.*) was tried before a jury, on April 26, 2012.[11] The parties stipulated that Appellant was not allowed to carry a firearm, by virtue of prior convictions. The jury convicted Appellant of all ten charges.[12]

---

10. Specifically, Appellant was charged with false imprisonment, 18 Pa.C.S.A. § 2903; recklessly endangering another person, 18 Pa. C.S.A. § 2705; indecent assault, 18 Pa.C.S.A. § 3126; harassment, 18 Pa.C.S.A. § 2709; robbery of a motor vehicle, 18 Pa.C.S.A. § 3702; criminal conspiracy, 18 Pa.C.S.A. § 903; theft by unlawful taking or disposition, 18 Pa.C.S.A. § 3921; persons not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S.A. § 6105(a)(1); firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1); two counts of criminal coercion, 18 Pa.C.S.A. § 2906(a)(1); two counts of terroristic threats, 18 Pa.C.S.A. § 2706(a)(1); two counts of unlawful restraint, 18 Pa.C.S.A. § 2902(a)(1); and two counts of simple assault by physical menace, 18 Pa.C.S.A. § 2701(a)(3).

11. In both jury trials, case nos. 227 and 226, Appellant was tried along with co-defendant, Marc Dorce.

12. Specifically, the jury convicted Appellant of Count 1, persons not to possess, use, manufacture, control, sell or transfer firearms, 18 Pa.C.S.A. § 6105(a)(1); Count 2, firearms not to be carried without a license, 18 Pa.C.S.A. § 6106(a)(1); Count 3, criminal coercion (Tabetha Mellott), 18 Pa.C.S.A. § 2906(a)(1); Count 4, criminal coercion (Joshua Weaver), 18 Pa.C.S.A. § 2906(a)(1); Count 5, terroristic threats (Tabetha Mellott), 18 Pa.C.S.A.

Case number 226 of 2011 (carjacking of Ashley Ramp) was tried separately before a jury the next day, April 27, 2012. The jury convicted Appellant of Count 1, robbery of a motor vehicle, 18 Pa.C.S.A. § 3702(a); and Count 3, theft by unlawful taking or disposition, 18 Pa.C.S.A. § 3921(a).[13] (*See* Verdict Slip, 4/27/12, at 1).

On May 29, 2012, the court sentenced Appellant on both criminal cases to an aggregate term of imprisonment of not less than 204 months' nor more than 408 months' incarceration in a state correctional institution.

The remaining two cases were scheduled for October of 2012. The court held a hearing on October 8, 2012, three days before trial, primarily to address Appellant's *pro se* motions challenging his representation by Attorney Michael O. Palermo. (*See* N.T. Hearing–Omnibus Motions, 10/08/12, at 2). It bears noting that both Appellant and the Commonwealth, as well as the trial court itself, invite our special attention to the transcript of that hearing. (*See* Trial Ct. Op., 5/07/13, at 14; *see also* Commonwealth's Brief, at 5; Appellant's Brief, at 26, 33, 35). The trial court and the Commonwealth cite that hearing as evidence of Appellant's hostility and disrespect to the trial court. Appellant cites the hearing as evidence of the trial court's animosity toward him. Appellant also argues, *inter alia*, that the "banter" between himself and the trial judge "created the appearance of impropriety." (Appellant's Brief, at 35).

At the conclusion of the hearing, after much back-and-forth with the trial judge, Appellant waived a jury trial in the remaining actions (case nos. CR 211–2011, and CR 223–2011). (*See* N.T. Hearing–Omnibus Motions, 10/08/12, at 20, 25). Accordingly, on October 11, 2012, Appellant proceeded to a bench trial on CR–211 and CR–223 (the two incidents at the mountain cabin of Travis Smith), before Judge Angela R. Krom, who had presided at the previous jury trials, the prior sentencing, and the preceding omnibus pre-trial hearing.

At CR–223 (invasion of Smith cabin in February, 2011), the court found Appellant guilty of burglary (F1) and simple assault (M2). (*See* N.T. Trial, 10/11/12, at 185–86). At CR–211 (invasion of Smith cabin on June 29, 2011 with Vicki Smalley Vance), the court found Appellant guilty of burglary (F1), criminal trespass (F3), and two counts of simple assault by physical menace (M2). (*See id.* at 190).

On December 18, 2012, the court sentenced Appellant at CR–223 to a term of not less than twenty-four months and not more than forty eight months' incarceration. (*See* Trial Ct. Op., 5/07/13, at 6). At CR–211, the court sentenced Appellant to a term of not less than sixty months nor more than 120 months' incarceration, consecutive to each other and consecutive to the sentences at CR–226 and CR–227. (*See id.* at 6–7). Appellant did not file post-sentence motions. These appeals followed.

Appellant raises five questions on appeal:

§ 2706(a)(1); Count 6, terroristic threats (Joshua Weaver), 18 Pa.C.S.A. § 2706(a)(1); Count 7, unlawful restraint (Tabetha Mellott), 18 Pa.C.S.A. § 2902(a)(1); Count 8, unlawful restraint (Joshua Weaver), 18 Pa.C.S.A. § 2902(a)(1); Count 9, simple assault by physical menace (Tabetha Mellott), 18 Pa.

C.S.A. § 2701(a)(3); and Count 10, simple assault by physical menace (Joshua Weaver), 18 Pa.C.S.A. § 2701(a)(3). (*See* Verdict Slip, 4/26/12, at 1–2).

13. The jury acquitted Appellant of count 2, criminal conspiracy. 18 Pa.C.S.A. § 903.

1. In Cases 211 and 223, did the trial court commit an abuse of discretion when it failed to recuse itself from presiding over the bench trials when the trial court had extensive knowledge of disputed facts in question, an established acrimonious relationship with [Appellant], and a lay observer could reasonably believe that the trial court was not impartial?

2. Did the trial court err in assessing credibility of the evidence and determining the findings of fact in Cases 211 and 223 when the evidence presented by the Commonwealth was so weak and inconclusive that, as a matter of law, no probability of fact may be drawn from the combined circumstances?

3. Did the trial court err when it denied [Appellant's] pretrial motion to quash the photo array/line-up and to suppress any and all identification, statements, and probable cause affidavits that mention and/or rely upon said alleged identifications which were unduly suggestive and presented a substantial likelihood of misidentification?

4. Did the trial court err when it allowed the out-of-court identification by Ashley Ramp, the first photo array identification by Tabetha Mellott, and any and all identifications, statements and probable cause affidavits that mention and/or rely upon said identifications because those identifications were obtained in violation of [Appellant's] state and federal due process rights?

5. In Case 226, was the testimonial evidence of the chief witness presented by the Commonwealth on the count of robbery of a motor vehicle so contradictory, inconsistent and inconclusive that, as a matter of law no probability of fact may be drawn?

(Appellant's Brief, at 15–16).

■ Preliminarily, before addressing the merits of Appellant's claims, we must evaluate whether he has properly preserved those issues for our review, as required by Pennsylvania Rule of Appellate Procedure 1925(b). *See Commonwealth v. Castillo,* 585 Pa. 395, 888 A.2d 775, 780 (2005) (reaffirming bright-line rule of *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998), requiring appellants to comply with trial court order for Rule 1925(b) statement). "Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." *Lord, supra* at 309. The *Castillo* Court disapproved of prior cases which found exceptions. *See Castillo, supra* at 780.

However, we are also mindful that in 2007 Rule 1925 was revised. Pa.R.A.P. 1925(b)(2), in pertinent part, now provides, "In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc.*" Pa.R.A.P. 1925(b)(2).

Here, the trial court notes, and current counsel for Appellant concedes, that the Rule 1925(b) statement of errors was filed thirty days late. (*See* Trial Ct. Op., 1/16/13, at 1; *see also* Appellant's Brief, at 17). However, the trial court attributes this late filling (by the second-to-last preceding counsel), to extraordinary circumstances.[14] (*See* Trial Ct. Op., 1/16/13, at 1). Without attempting to determine the relative responsibilities for this result, except as otherwise expressly noted, we find ample support in the record for the existence of extraordinary circumstances.

---

**14.** The Rule 1925(b) statement at issue was filed by Michael O. Palermo, Esq., who represented Appellant at all trials.

Starting with the basic fact of four separate, albeit intertwined, cases, and adding Appellant's tendentious relations and multiple accusations against each counsel, the succession of multiple counsel, the barrage of counseled and especially *pro se* motions, and the consequent need for counsel to review the voluminous record of filings, we find that collectively all these conditions are more than sufficient to support the trial court's finding of extraordinary circumstances in this case.[15]

Accordingly, we defer to this fact finding of the trial court, deem the statement in question to have been filed *nunc pro tunc*, and proceed to a review of Appellant's issues on the merits. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa.Super.2009) (holding, under amended Rule 1925, this Court may decide appeal on merits if trial court had adequate opportunity to prepare opinion addressing issues raised on appeal in untimely filing).

 Appellant's first question challenges the trial judge's decision not to recuse herself from presiding over the bench trial for CR–211 and CR–223, after presiding over the jury trials, the attendant motion hearings, and the prior sentencing. (*See* Appellant's Brief, at 15). He claims he is entitled to new trials. (*See id.* at 55). We disagree.

 Our standard of review for a denial of recusal is well-settled.

[Our Supreme] Court presumes judges of this Commonwealth are "honorable, fair and competent," and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. *Commonwealth v. White*, 557 Pa.

408, 734 A.2d 374, 384 (1999). The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the "decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." [*Commonwealth v.*] *Darush*, [501 Pa. 15, 459 A.2d 727,] 731 [ (1983) ].

*Commonwealth v. Druce*, 577 Pa. 581, 848 A.2d 104, 108 (2004).

As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion.

*Commonwealth v. Abu–Jamal*, 553 Pa. 485, 720 A.2d 79, 89 (1998) (citations omitted).

"[A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned." *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652, 654 (1973). It

---

15. Nevertheless, in the interest of clarity and completeness, we are constrained to note that the trial court's reliance on *Commonwealth v. Priest*, 18 A.3d 1235 (Pa.Super.2011) is mis-placed. (*See* Trial Ct. Op., 1/16/13, at 2). *Priest* found waiver. *See Priest, supra* at 1239 n. 7.

is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final. [ ] *Druce, [supra* at] 108 [ ]. "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion." [ ] *Abu–Jamal, [supra* at] 89.

*Commonwealth v. Blakeney,* 596 Pa. 510, 946 A.2d 645, 662 (2008), *cert. denied,* 555 U.S. 1177, 129 S.Ct. 1317, 173 L.Ed.2d 596 (2009).

In this case, Appellant bases his claim of abuse of discretion on "the adversarial and acrimonious nature of the relationship between [Appellant] and the trial court[.]" (Appellant's Brief, at 26). Appellant also argues that the trial judge should have recused herself because, after presiding over the first two jury trials, and exposure to the pre-sentence investigation report which provided Appellant's criminal history, she was aware of evidence "that an impartial finder of fact would not have known." (*Id.* at 55). We disagree.

■ Preliminarily, we note that it is well-settled that "[e]ven if prejudicial information was considered by the trial court, a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence." *Commonwealth v. Fears,* 575 Pa. 281, 836 A.2d 52, 71 n. 19 (2003), *cert. denied,* 545 U.S. 1141, 125 S.Ct. 2956, 162 L.Ed.2d 891 (2005) (citation omitted).

■ Next, we observe that our Supreme Court has "tentatively accepted the extra-judicial source doctrine, noting that it is significant if the information at the root of the recusal motion was obtained in a prior proceeding of the case, and not from any pretrial bias or personal disdain."

*Druce, supra* at 110 (citing *Commonwealth v. Boyle,* 498 Pa. 486, 447 A.2d 250, 252 n. 6 (1982)). The Court explained that "[u]nder the extra-judicial source doctrine, alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal." *Id.* at 110 n. 3. In further explanation, the Court cited with approval *Liteky v. U.S.,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). *See id. Liteky* elaborated:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, **judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.** They may do so if they reveal an opinion that derives from **an extrajudicial source;** and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . **Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger,** that are within the bounds of what imperfect men and women, even after having been confirmed as [ ] judges, sometimes display. **A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.**

*Liteky, supra* at 555–56, 114 S.Ct. 1147 (some emphasis in original, some emphasis deleted, some emphasis added) (citations omitted).

Accordingly, here, evidence of the trial judge's efforts to maintain orderly proceedings in the courtroom, in the face of Appellant's acknowledged intransigence and impertinence, falls far short of proof of bias, and certainly not bias from an extrajudicial source. Nor can Appellant manufacture grounds for recusal by embarking on a course of deliberate obstreperous conduct and then claiming the judge's responses give an appearance of partiality. The *Liteky* Court observed:

> As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (C.A.2 1943). **Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings.** It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

*Liteky, supra* at 551, 114 S.Ct. 1147 (emphasis added). *Accord Commonwealth v. Bryant*, 328 Pa.Super. 1, 476 A.2d 422, 424 n. 1 (1984) ("A judge is not automatically disqualified from hearing a case merely because he has presided over prior cases involving the same defendant.") (citations omitted).

■ In this appeal, Appellant also maintains that "the cumulative effect of the banter ... created the appearance of improperiety." (Appellant's Brief, at 35). He concedes that "no single act" in the record creates bias. (*Id.*). However, Appellant offers no authority for the proposition that a series of rulings, each proper in itself, can be transformed into a cumulative ground for recusal. (*See id.*).

■ To the contrary, it is well-settled that an appellant cannot bootstrap a series of meritless claims into a cumulative claim of error. *See Commonwealth v. Rolan*, 964 A.2d 398, 411 (Pa.Super.2008) ("[N]o number of **failed** claims may collectively attain merit if they could not do so individually.") (quoting *Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716, 722 (1992)) (emphasis in original).

Appellant cites the "Code of Judicial Canon 3(C)(a) [sic]" to the effect that a judge should disqualify herself if her impartiality might reasonably be questioned.[16] (*See* Appellant's Brief, at 29). In further support of this assertion, Appellant quotes *Commonwealth v. Bryant, supra* at 426 (quoting *Darush, supra* at 732), to argue that "disqualification of a judge is mandated whenever 'a significant minority of the lay community could reasonably question the court's impartiality.'" (Appellant's Brief, at 29). Appellant's reliance is misplaced.

■ In the first place, enforcement of the Code of Judicial Conduct is beyond the jurisdiction of this Court. *See Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291, 1298 (1985), *overruled on other grounds as recognized by Gallagher v. Harleysville Mut.*

---

**16.** In pertinent part, Canon 3(C)(1)(a) of the Code of Judicial Conduct provides:

 C. Disqualification.

 (1) Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where:

 (a) they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

Code of Jud. Conduct, Canon 3(C)(1)(a), 42 Pa.C.S.A.

*Ins. Co.*, 421 Pa.Super. 192, 617 A.2d 790, 794 (1992). Our Supreme Court explained:

> In furtherance of our exclusive right to supervise the conduct of all courts and officers of the judicial branch of government pursuant to Article V, Section 10(c) of our Constitution, we have adopted rules of judicial conduct for ourselves and all members of the judicial branch. (*See* Rules of Judicial Conduct, effective January 1, 1974, and reported at 455 Pa. XXXIX.) The enforcement of those rules, however, is beyond the jurisdiction of the Superior Court and to the extent that it has attempted to interpret Canon 3 C, by creating new standards of review on recusal motions, procedures for raising recusal questions, or for enforcement of violations of the Code, they are without effect, as unwarranted intrusions upon this Court's exclusive right to supervise the conduct of all courts and officers of the judicial branch.

*Reilly, supra* at 1298 (footnote omitted). The Supreme Court added:

> Canon 3 C, like the whole of the Code of Judicial Conduct, does not have the force of substantive law, but imposes standards of conduct upon the judiciary to be referred to by a **judge** in his **self-assessment** of whether he should volunteer to recuse from a matter pending before him. The rules do not give standing to others, including Superior Court, to seek compliance or enforcement of the Code because its provisions merely set a norm of conduct for all our judges and do not impose substantive legal duties on them.

*Id.* (emphasis in original).

Furthermore, the cases Appellant cites are readily distinguished.

In *Bryant,* the averment was that in earlier cases, after a jury verdict, the trial judge had told defense counsel that he had already made up his mind to impose maximum, consecutive sentences on each and every information on which defendant had been convicted, and had fixed the date for post verdict motions and sentencing the day before election day because he was running for reelection and believed he would receive favorable publicity from the sentencing, thus improving his prospects for reelection. *See Bryant, supra* at 425.

In *Darush, supra,* despite the denial of a new trial, our Supreme Court remanded for resentencing in express consideration of the trial judge's professed inability to admit or deny the appellant's allegation that during the trial judge's election campaign for judgeship, which appellant had openly opposed, the trial judge may have overheard derogatory remarks he (appellant) had made concerning the candidate to his campaign manager; furthermore, appellant alleged the judge had also made derogatory remarks about him, including that "[w]e want to get people like him [appellant] out of Potter County," to a third party. *Darush, supra* at 732.

Here, nothing even remotely similar to the allegations in either of those cases occurred. Furthermore, Appellant's argument is unsupported by any citation to pertinent controlling authority in support of his specific claims.[17] Accordingly, Appellant has failed to meet his burden of proving "a significant minority of the lay community could reasonably question the court's impartiality." *Darush, supra* at 732.

---

**17.** Appellant correctly notes that recusal is required only when there is substantial doubt as to the jurist's ability to preside impartially; and that the jurist's decision will not be overturned except for an abuse of discretion, quoting *Boyle, supra* and *Abu–Jamal, supra.* (*See* Appellant's Brief, at 29).

On independent review of the record, we cannot conclude that any of the trial court's remarks were unjustified or indiscriminate, nor that they evidenced a settled bias against Appellant. We discern no basis for finding abuse of discretion. The trial judge properly refused to recuse herself. Appellant's first claim fails.

■ We address Appellant's second and fifth questions, both challenging the sufficiency of the evidence, together. In Appellant's second question, he challenges the sufficiency of the evidence for his convictions at CR–211 and CR–223. (*See* Appellant's Brief, at 36–43). Notably, he does not argue that the Commonwealth failed to prove an element or elements of any crime.

Instead, in a variation of his argument for recusal, Appellant claims "the findings were not made by an impartial finder of fact[.]" (*Id.* at 43). He asserts that the testimony was "*contradictory and weak.*" (*Id.*). Similarly, in his fifth question, Appellant claims the evidence to support the crime of robbery of a motor vehicle (Case 226), was "contradictory, weak and inconclusive[.]" (*Id.* at 50; *see also id.* at 50–54). We disagree.

■ Our standard of review for a challenge to sufficiency is well-settled.

The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.

Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

*Commonwealth v. Slocum*, 86 A.3d 272, 275–76 (Pa.Super.2014) (citations omitted).

In this appeal, Appellant's second claim fails for the same reason as his first. Appellant failed to prove bias or partiality of the trial judge. Therefore, any challenge to sufficiency based on the assumed bias of the trial judge as fact-finder fails as well. Appellant does not develop any other argument that the Commonwealth failed to prove any element of the charges for which he was convicted. (*See* Appellant's

Brief, at 43). His second issue does not merit relief.

In his fifth claim, Appellant challenges the testimony of the victim of the carjacking, Ashley Ramp. (*See* Appellant's Brief, at 50–54). Appellant points to various alleged inconsistencies and other perceived shortcomings in Ms. Ramp's testimony. It was the province of the jury as fact-finder to weigh the evidence and believe all, part or none of it. *See Slocum, supra* at 275–76. It was also the role of the jury to assess credibility. Appellant's claims actually go to the weight of evidence rather than sufficiency. We decline Appellant's implicit invitation to re-weigh the evidence. His fifth claim fails.

We address Appellant's third and fourth questions together. Both challenge identification of Appellant, particularly the photo arrays. The third claim challenges the denial of Appellant's pre-trial motion to quash the photo array, and to suppress all identification, statements, and probable cause affidavits. (*See* Appellant's Brief, at 44–47). The fourth claim challenges the out-of-court identification of Appellant by Ashley Ramp, and the first photo array identification by Tabetha Mellott, any and all identifications, the affidavit of probable cause and so forth. (*See* Appellant's Brief, at 47–50). Appellant claims the photo arrays were unduly suggestive, and that the identifications were obtained in violation of his state and federal due process rights. (*See* Appellant's Brief, at 44–50). We disagree.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102, 112 (2004) (citation omitted).

In reviewing the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable. The purpose of a "one on one" identification is to enhance reliability by reducing the time elapsed after the commission of the crime. Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors. Absent some special element of unfairness, a prompt "one on one" identification is not so suggestive as to give rise to an irreparable likelihood of misidentification.

*Commonwealth v. Moye,* 836 A.2d 973, 976 (Pa.Super.2003), appeal denied, 578 Pa. 694, 851 A.2d 142 (2004) (citations omitted); *see id.* at 977–78 (affirming conviction based on victim's one-on-one, crime-scene identification of appellant viewed alone in police van, **wearing handcuffs,** where police said " 'they had someone' for her to identify and had 'found him running down the street all sweaty and just tired looking' ").

*Commonwealth v. Armstrong,* 74 A.3d 228, 238 (Pa.Super.2013) (emphasis added).

Here, in the totality of circumstances, we conclude that the identifications were neither unreliable nor unduly suggestive. On independent review, we find that Appellant's claim that he was the only person of light complexion included in the photo array, such that his photograph was unduly suggestive, is not supported by the record. Similarly, the claim that in one photo array he was the only person with a smile is insufficient to prove unreliability or suggestiveness.

The assertion of an incidental variation in appearance does not prove undue suggestiveness, and Appellant offers no controlling authority to the contrary. Notably absent from Appellant's argument is any reference to the undisputed fact that both Ms. Mellott and Ms. Ramp were previously acquainted with Appellant, albeit under an alias. Therefore, both women had an independent basis for their respective identifications.

In Ms. Mellott's case, she picked up Appellant and his co-defendant Dorce, brought them back to her house overnight, conversed with them for some forty-five minutes in the morning, was held at gunpoint within close range for several hours while she first stripped for them to prove she was not hiding drugs, and then waited on the couch for hours until the codefendants were able to obtain transportation.

In Ms. Ramp's case, she had been hosting the co-defendants as boarders for several weeks before the day she saw them on the street asking for a ride, which resulted in the carjacking.

Of particular note, Appellant's argument that one of his photographs·depicts him in a distinctive prison-issued orange jumpsuit is unsupported by the evidence of record and without merit. It is undisputed that the photograph is in black and white (as were all photographs in both arrays). All of the photographs are head-and-shoulder shots. Our independent review of the photos confirms that the fact that Appellant was in an orange prison jumpsuit is not apparent. There is simply no way to determine anything specific about the clothing any of the eight men were wearing.

Additionally, Appellant's argument that his identification by Ms. Ramp was unduly suggestive because he was handcuffed to a bench at the State Police barracks does not merit relief. (*See* Appellant's Brief, at 47). *See Armstrong, supra* at 239 (suppression properly denied; identification not unduly suggestive even though appellant presented in handcuffs); *see also Moye, supra* at 977–78 (finding no "special elements of unfairness" where appellant was shown to complainants handcuffed in police van); *Commonwealth v. Allen,* 287 Pa.Super. 88, 429 A.2d 1113, 1120 (1981) (denial of suppression proper even though defendants were handcuffed in back of police van when victims identified them without hesitation).

Finally, Appellant claims that "[o]nce [he] was under arrest, his right to counsel attached[,]" "[t]he out-of-court identification by Ms. Ramp should have been suppressed," and the subsequent affidavit of probable cause should have been "suppressed as fruit of the poisonous tree[.]" (Appellant's Brief, at 47–48). Appellant's claim does not merit relief.

 Appellant asserts that he had a "constitutional right to counsel for all identifications occurring after arrest[.]" (*Id.* at 48). Appellant fails to develop an argument in support of this claim, or to provide pertinent citation to authority. *See* Pa. R.A.P. 2119(a), (b); *see also Commonwealth v. Beshore,* 916 A.2d 1128, 1140 (Pa.Super.2007), *appeal denied sub nom. Commonwealth v. Imes,* 603 Pa. 680, 982 A.2d 509 (2009) ("We shall not develop an argument for [the appellant], nor shall we

scour the record to find evidence to support an argument; consequently, we deem this issue waived."). Accordingly, this claim is waived.

■ Moreover, Appellant has failed to present required facts to support a claim for relief. In Pennsylvania, a defendant has a constitutional right to have counsel present during identification procedures. *See Commonwealth v. Whiting,* 439 Pa. 205, 266 A.2d 738 (1970), *cert. denied,* 400 U.S. 919, 91 S.Ct. 173, 27 L.Ed.2d 159 (1970), and its progeny. However, this right is triggered by the arrest of the accused. *See Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656, 665 (1986), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987) ("To extend the Sixth Amendment right to counsel during photographic identification proceedings to any person merely suspected of a crime would be an unreasonable burden on law enforcement officials and on the taxpayer, who in many instances must ultimately underwrite the cost of such representation."). Furthermore, "the right to counsel at a photographic array does not attach when the suspect is in custody for a **different offense** than that for which the array has been compiled." *Commonwealth v. Blassingale,* 398 Pa.Super. 379, 581 A.2d 183, 190 (1990) (quoting *Commonwealth v. McKnight,* 311 Pa.Super. 370, 457 A.2d 931 (1983) (emphasis added)). *Accord Commonwealth v. Harrell,* 65 A.3d 420, 438 (Pa.Super.2013).

Here, Appellant does not establish that Appellant was in custody for these offenses, or if he was arrested pursuant to the Maryland fugitive warrants, or indeed if he had been formally arrested at all. To the contrary, Appellant's argument is based on mere supposition: "This first identification happened within one (1) month of the incident, although Ms. Mellott could not recall the date. No attorney was present for this identification, even though it **most likely took place** when [Appellant] was in custody and the right to an attorney had attached." (Appellant's Brief, at 45) (emphasis added). Appellant is not entitled to constitutional relief based on mere unsupported speculation. *See Commonwealth v. McCoy,* 601 Pa. 540, 975 A.2d 586, 590 (2009) (holding right to counsel attaches at initiation of adversary judicial proceedings, generally at arraignment) (citing cases).

Additionally, as previously noted, both victims were already well acquainted with Appellant, furnishing an independent basis for their respective identifications. "Due process does not require that every pretrial identification of witnesses must be conducted under laboratory conditions of an approved lineup." *Commonwealth v. Jones,* 220 Pa.Super. 214, 283 A.2d 707, 708–09 (1971) (citation omitted). In the totality of circumstances, we conclude that the identifications were neither unreliable nor unduly suggestive.

The trial judge properly refused to recuse herself. The evidence was sufficient for all convictions. The trial court properly refused to suppress the identifications. None of Appellant's claims merit relief.

Judgment of sentence affirmed.

OLSON, J., concurs in the result.