J-S76042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM NICHOLSON, | |
| Appellant | No. 110 EDA 2017 |

Appeal from the Judgment of Sentence November 17, 2016
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0009020-2013

BEFORE: PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED FEBRUARY 16, 2018**

Appellant, William Nicholson, appeals from the judgment of sentence following his bench trial conviction of possession with intent to deliver (PWID)—oxycodone, possession of a controlled substance—oxycodone, and possession of drug paraphernalia.[1] Specifically, he challenges the sufficiency and weight of the evidence to support his conviction, and claims that the trial judge should have *sua sponte* recused himself. We affirm.

We take the factual and procedural history in this matter from our review of the certified record and the trial court's February 1, 2017 opinion.

> [On October 24, 2013,] Detective [Brendan] Dougherty and three
> other officers responded to a complaint from the previous night

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. §§ 780-113(a)(30), (16), and (32) respectively.

that the staff at Plaza Azteca in King of Prussia, [Pennsylvania,] felt unsafe and thought they might have been followed. . . . While the police were conducting surveillance, they noticed a silver or gray Ford F-250. A Honda CR-V pulled in near the pickup truck and a male, later identified as James Peiffer, exited the Honda CR-V and walked to the pickup truck where he spoke to an individual sitting in the driver's seat, later identified as [Appellant] . . . . Mr. Peiffer then entered the passenger seat and spoke with [Appellant] for 15-20 minutes. Police noticed that anytime a patron of the restaurant approached the car, [Appellant] would dim the dome lights in the car until the patron passed and then turn the lights back on. Police watched [Appellant] exit the truck, open a half-door also on the driver's side, reach into the half[-]door and then return to the driver's seat.

Police approached the vehicle and asked for ID from the occupants. Police saw a concealed carry permit, asked [Appellant] if there was a gun, and retrieved the weapon from the center compartment when [Appellant] . . . gave consent for police to retrieve it. Police then obtained a written consent to search the vehicle. During the search of the car, police searched the half-door where they had seen [Appellant] reach into earlier and found a clear plastic bag with forty small blue pills, suspected oxycodone. [Appellant] signed **Miranda**[2] warnings and gave a statement to police where he admitted that he went to Plaza Azteca to meet Mr. Peiffer to sell fifty pills for $15 each. [Appellant] refused to sign a statement to that effect. Police then obtained a search warrant and a subsequent search of the vehicle revealed thirty-two more identical pills in the cup holder of the center console. [All of the pills] were later tested and found to be oxycodone, a schedule II narcotic.

[Appellant] told police that he was working with the Office of the Attorney General of Pennsylvania. Detective Dougherty testified that in his several years of working with confidential informants (CIs), he never encountered someone that would act under direction of a law enforcement agency without the agency being present. Police searched [Appellant] and recovered from [his] person over $5,380 in cash. Police also recovered a box of empty sandwich bags in the car and a cooler with keys in sandwich bags. A machete was also found in the backseat of the car. . . . Later, police reached out to the Office of the Attorney General and

_____

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

learned [Appellant] was not working for them on October 24, 2013 in the parking lot of Plaza Azteca. Detective [Martin] Menago testified consistent with Detective Dougherty's testimony regarding what they had witnessed . . . in the parking lot. . . .

. . . Mr. Peiffer testified that he had discussed purchasing one hundred Percocets from [Appellant] and that they were to meet on October 24, 2013[,] around 9 P.M. Mr. Peiffer testified that he gave [Appellant] the money but pills were not exchanged because [Appellant] did not have what he wanted to buy. Mr. Peiffer testified that he was going to buy one hundred Percocets for $15 or $16 each and gave [Appellant] $1,500 or $1,600 while he was in the car.

(Trial Court Opinion, 2/01/17, at 1-3) (record citations, quotation marks, and unnecessary capitalization omitted).

Appellant called Detective Timothy Deery who had worked as a narcotics officer with the Pennsylvania Attorney General's Office, and was responsible for supervising Appellant's work as a confidential informant. Detective Deery testified that Appellant had worked for the Attorney General's Office as a paid informant, and was still an informant during October 2013, when he was arrested. (*See* N.T. Trial, 6/30/16, at 174, 179, 198). Appellant worked as an informational intelligence informant and was not asked to have any interaction with actual drugs. (*See id.* at 197).

Detective Deery explained that his common practice with confidential informants was for the informant to conduct controlled buys with the officer in close proximity and with surveillance on the informant. (*See id.* at 189). He explained that informants were prohibited from being armed during controlled buys. (*See id.* at 190). Detective Deery conceded that neither he nor a member of his team were physically supervising Appellant on October

24, 2013, at the Plaza Azteca, and that Appellant had not notified him that he was going to engage in some sort of transaction. (*See id.* at 191-92).

After the bifurcated two-day bench trial on May 31, 2016 and June 30, 2016, the court convicted Appellant on August 3, 2016. On November 17, 2016, the court sentenced him to not less than eleven and one-half nor more than twenty-three months of imprisonment, followed by five years of probation. Appellant filed timely post-sentence motions challenging the weight and sufficiency of the evidence, which the court denied on November 30, 2016. This timely appeal followed.[3]

Appellant presents three questions on appeal:

    I.    Is [Appellant] entitled to an arrest of judgment where the evidence as here was insufficient to support the verdict as the evidence did not establish that [Appellant] was a principal, conspirator or an accomplice with regard to the crimes charged?

    II.    Is [Appellant] entitled to a new trial as the verdict was not supported by the greater weight of the evidence and where the verdict rested on suspicion, conjecture and surmise?

    III.    Is [Appellant] entitled to a new trial where the trial judge impermissibly heard this matter as a non-jury trial as the very same judge had taken the guilty plea of a co-conspirator who admitted to the essential elements of the crime which were facing [Appellant] including a conspiracy charge, and where the court should have *sua sponte* recused itself?

(Appellant's Brief, at 3) (unnecessary capitalization omitted).

---

[3] Pursuant to the trial court's order, Appellant filed his concise statement of errors complained of on appeal on January 19, 2017. The court entered its opinion on February 1, 2017. *See* Pa.R.A.P. 1925.

In his first issue, Appellant challenges the sufficiency of the evidence to support the guilty verdicts for PWID, possession of a controlled substance, and possession of drug paraphernalia. (*See id.* at 12-17). Specifically, he claims that the evidence was insufficient for each because the Commonwealth failed to prove that he had the specific intent to possess and distribute drugs. Alternatively, he contends that the record proved that he was acting as a government informant. (*See id.*). We disagree.

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011), *affirmed*, 106 A.3d 705 (Pa. 2014) (plurality decision) (case citations and quotation marks omitted).

> To prove a defendant guilty of possession of a controlled substance [] and possession with the intent to deliver a controlled substance [], the Commonwealth was required to prove beyond a reasonable doubt that Appellee possessed a controlled substance and that he did so with the intent to deliver that substance to another person. The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case including the manner in which the drugs were packaged, the form of the drug and the behavior of the defendant. . . .

*Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa. Super. 2008), *appeal denied*, 980 A.2d 606 (Pa. 2009) (citation omitted). "To sustain a conviction for possession of drug paraphernalia[,] the Commonwealth must

establish that items possessed by defendant were used or intended to be used with a controlled substance so as to constitute drug paraphernalia and this burden may be met by [the] Commonwealth through circumstantial evidence." *Commonwealth v. Coleman*, 984 A.2d 998, 1001 (Pa. Super. 2009) (citation omitted).

Here, the Commonwealth introduced evidence that Appellant, who was observed meeting with Mr. Peiffer in his truck in a parking lot, was in possession of seventy-two oxycodone pills, over $5,380 in cash, and a box of empty sandwich bags. (*See* N.T. Trial, 5/31/16, at 62-64, 142). Detective Deery testified that although Appellant had worked as an informant for them, on October 24, 2013, he was not buying, selling, or possessing drugs at the direction of the Attorney General's Office. (*See id.* at 191-92, 196-97).

Based on the above standard of review, we view the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. *See Koch*, *supra* at 1001. Therefore, we conclude that the evidence, viewed in the light most favorable to the Commonwealth, proves that he intended to possess and deliver oxycodone and drug paraphernalia. *See Coleman*, *supra* at 1001; *Hutchinson*, *supra* at 806. Appellant's first issue does not merit relief.

In his second issue, Appellant contends that the verdict went against the weight of the evidence. (*See* Appellant's Brief, at 17-18). Specifically, he claims that because he thought that he was acting as an informant, the

greater weight of the evidence supported his acquittal, not his conviction. (***See id.*** at 18).  We disagree.

Our scope and standard of review for a weight of the evidence claim are well-settled.

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
>
> As an appellate court, we cannot substitute our judgment for that of the finder of fact.  Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice.  A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.
>
> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence.  Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Boyd***, 73 A.3d 1269, 1274–75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted).  "Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings."  ***Commonwealth v. Diggs***, 949 A.2d 873, 879–80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).  Furthermore, "[w]e will respect a trial court's findings with regard to the credibility and weight of the evidence [after a bench trial] unless the appellant

can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." ***J.J. DeLuca Co., Inc. v. Toll Naval Assocs.***, 56 A.3d 402, 410 (Pa. Super. 2012) (citation omitted).

The trial court addressed Appellant's weight claim as follows:

> The evidence in this case strongly supports a finding of guilt beyond a reasonable doubt on all charges, and any countervailing evidence is not supported by the record. Indeed, [Appellant's] own statement contradicts evidence of innocence. The evidence is not so lacking as to shock the conscience. The testimony of the detectives, Mr. Peiffer, and the statement of [Appellant] himself are consistent with each other, and the drugs and money found corroborate the statements and text messages discussing a drug deal. Therefore, the claim that the verdict is against the greater weight of the evidence must fail, and the verdict of [the trial c]ourt should be affirmed.

(Trial Ct. Op., at 14) (quotation marks and citation omitted).

The trial court was free to believe the Commonwealth's witnesses and disbelieve the defense's theory of the case. ***See Boyd***, ***supra*** at 1274-75. Therefore, we conclude that the trial court did not abuse its discretion by denying Appellant's motion for a new trial based on the weight of the evidence. Appellant's second issue is without merit.

In his final issue, Appellant contends that he is entitled to a new trial because the trial judge failed to *sua sponte* recuse himself after having taken the guilty plea of Mr. Peiffer. (***See*** Appellant's Brief, at 19-24).[4] Specifically,

_____

[4] To the extent that Appellant attempts to argue that his waiver of his right to a jury trial was invalid, such argument is not fairly suggested by his statement

he argues that because Mr. Peiffer pleaded guilty to conspiracy for possession with intent to deliver, and named Appellant as his co-conspirator, the trial judge could not base a not guilty verdict on reasonable doubt created by Mr. Peiffer's testimony. (*See id.* at 22). Thus, he claims the trial judge "had a legal duty to remove himself *sua sponte*[,]" and abused his discretion by not doing so. (Appellant's Brief, at 23).[5] We disagree.

> [Our Supreme] Court presumes judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, have the ability to determine whether they can rule impartially and without prejudice. The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion.
>
> \* \* \*
>
> [A] trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case or whenever he believes his impartiality can be reasonably questioned. It is presumed that the judge has the ability to determine whether he will be able to rule impartially and without prejudice, and his assessment is personal, unreviewable, and final. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overturned on appeal but for an abuse of discretion.

---

of questions presented, and therefore will not be considered on appeal. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

[5] Appellant failed to provide any legal support for his claim that the trial judge had a legal duty to recuse himself. (**See** Appellant's Brief, at 23); **see also** Pa.R.A.P. 2119(a).

*Commonwealth v. Kearney*, 92 A.3d 51, 60–61 (Pa. Super. 2014), *appeal denied*, 101 A.3d 102 (Pa. 2014) (citations and quotation marks omitted).

Furthermore, "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." **Kearney**, **supra** at 61 (quoting **Liteky v. United States**, 510 U.S. 540, 555 (1994)).

Here, in its opinion, the trial court explains that

[T]here is no evidence that this court had any antagonism or favoritism regarding [Appellant]. Further, [Mr. Peiffer] plead guilty on April 30, 2015[,] and the [b]ench [t]rial commenced on May 31, 2016, more than a year after the guilty plea. This court would have been unlikely to remember the case, and even if [it] remembered the facts of the [g]uilty [p]lea, [the trial c]ourt is more than capable of setting aside the conviction of another defendant and looking at the evidence before it.

Most importantly, even had [the trial c]ourt recused itself, the court hearing this case would still have been aware of the guilty plea **as the defense itself** uses the [g]uilty [p]lea [c]olloquy to impeach Mr. Peiffer. . . .

(Trial Ct. Op., at 17) (emphasis in original; citations omitted).

Upon review, we discern no abuse of discretion. **See Kearney**, **supra** at 60-61. We conclude that the trial court's decision not to *sua sponte* recuse itself from Appellant's bench trial after having taken the guilty plea of Mr. Peiffer a year earlier, does not evidence a settled bias against Appellant, nor does it "display a deep-seated favoritism or antagonism that would make fair

judgment impossible." *Id.* at 61.  Accordingly, we discern no basis for finding an abuse of discretion.  Appellant's final issue is meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/18