J-S15036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| EMERSON PAUL LOUIS SEGER | : | No. 1425 MDA 2022 |

Appeal from the Order Entered September 29, 2022
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0001016-2020

BEFORE:  BOWES, J., STABILE, J., and SULLIVAN, J.

DISSENTING MEMORANDUM BY BOWES, J.: **FILED: OCTOBER 30, 2023**

The learned majority affirms the order of the trial court holding that there was insufficient evidence to convict Emerson Paul Louis Seger ("Appellee") of attempted murder.  As I deem the Commonwealth's evidence sufficient to sustain the jury's verdict, I must respectfully dissent.

Our standard of review informs my consideration of this matter. Evidentiary sufficiency is a legal question subject to *de novo*, plenary review. ***See***, ***e.g.***, ***Commonwealth v. Smith***, 234 A.3d 576, 581 (Pa. 2020).  In conducting that review, "we examine whether the evidence presented and admitted at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt."  ***Commonwealth v. Murray***, 83 A.3d 137, 150-51 (Pa. 2013).  The "determination of the ultimate question of evidentiary sufficiency [is] . . . whether any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Martin*, 297 A.3d 424, 432 (Pa.Super. 2023).

The facts of the case are not in dispute and are faithfully recited by the majority. *See* Majority Memorandum at 1-3. For ease of my analysis, on the night in question, Appellee and three other individuals went to Frislet Joseph's residence to confront him about a prior dispute that he had with one of Appellee's companions. After arriving, Appellee and the other men kicked at Joseph's door. Through the door, they could hear Joseph yelling. When they became aware that Joseph was informing law enforcement of the situation, they decided to leave. Appellee went to a window near the door and fired three shots through the window in the direction of the door and, thereafter, Appellee and his cohorts fled the scene.

My esteemed colleagues correctly note that the crime of attempted murder is "composed of two primary elements: (1) the *mens rea* element, which is the specific intent to kill . . . and (2) the *actus reus* element, which is the commission of one or more acts which collectively constitute a substantial step toward the commission of a killing." *Id*. at 5-6 (cleaned up). The *actus reus* element is uncontested and is satisfied through Appellee's action of travelling to Joseph's residence and shooting through the window. *See id*. at 11. Rather, the disputed element is the *mens rea* element, *i.e.*, whether Appellee possessed the specific intent to kill. The trial court found, and the learned majority agreed, that the Commonwealth failed to proffer sufficient

evidence to prove beyond a reasonable doubt that Appellee possessed such intent.

Upon review of the certified record, I do not believe that the majority was sufficiently deferential to the jury's verdict. Drawing all reasonable inferences in favor of the Commonwealth as the verdict winner, the factfinder could have rationally concluded that Appellee possessed the requisite intent to kill to satisfy a conviction for attempted murder. Critically, the shots fired by Appellee were not discharged outside the residence into the air or at the ground, suggesting mere "warning" shots not meant to hit Joseph. Instead, shooting through a window into the occupied residence at a height designed to strike a person supports the reasonable inference that Appellee intended to kill Joseph. Moreover, because one of Appellee's companions testified that he could hear Joseph through the door, it was well within the province of the jury to infer, based upon the direction in which Appellee fired the gun, that he was aiming his shot at where he believed Joseph to be.

This is not a case where "the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Kearney*, 92 A.3d 51, 64 (Pa.Super. 2014). Certainly, the Commonwealth did not present direct evidence that Appellee knew precisely where Joseph was in the house and targeted him. However, it was not obligated to do so. *See, e.g., Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa.Super. 2017) ("The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable

doubt by means of wholly circumstantial evidence"). Nonetheless, the jury was not required to engage in pure speculation or surmise intent from nothing. Rather, the factfinder could rationally infer from the surrounding circumstances that Appellee discharged his gun to where he thought that Joseph was situated inside the residence in order to strike and kill him.

Based on the foregoing, I conclude that the evidence presented at trial supported the reasonable inference made by the jury that Appellee possessed the requisite intent to kill. Since I would therefore reverse the trial court's order invalidating the jury's verdict as to the crime of attempted murder, I respectfully dissent.