J-S42003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL FUENTES | |
| Appellant | No. 983 WDA 2013 |

Appeal from the PCRA Order May 13, 2013
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0004167-2005

BEFORE:  PANELLA, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 29, 2014**

Appellant, Michael Fuentes, appeals *pro se* from the order entered May 13, 2013, by the Honorable Jeffrey A. Manning, Court of Common Pleas of Allegheny County, which denied Fuentes's petition filed pursuant to the Post Conviction Relief Act.[1]  We affirm.

On direct appeal, a panel of this Court previously recounted the history of this case as follows.

On the evening of February 18, 2005, Ronald Fehl and his fiancée, Shannon O'Kelley, were having an anniversary party. N.T., 7/25/07 at 57-61.  The couple was there with Mr. Fehl's cousin, Clifford Crotteau; their friend, Amanda Hippensteel; Mr. Fehl's co-worker, Andrew Loeffler; and Ms. O'Kelley's infant daughter. *Id*. at 58, 90, 104-105.  While Mr. Fehl left for a brief period, two men pushed their way into the house; and one of the men, brandishing a gun, demanded the victims empty their

---

[1] 42 Pa.Cons.Stat.Ann. §§ 9541-9546.

pockets and lie down on the carpet. *Id*. at 61. The men proceeded to remove items from the home to ransack it. *Id*. at 63, 73. Mr. Fehl eventually returned and was shot in the stomach by one of the intruders. N.T. 7/26/07 at 8. Both intruders eventually fled the residence. *Id*. at 11.

A short time after the incident, [Fuentes], who matched the description of the gunman, was apprehended while running down the street. *Id*. at 33-37. He was transported to the police station, and ultimately the robbery victims, Ms. O'Kelley, Ms. Hippensteel, and Mr. Loeffler, were taken to that same police station for more questioning. *Id*. at 47, 56. Mr. Fehl, the shooting victim, was taken to the hospital for treatment. *Id*. at 46.

At some point, according to Detective Scott Scherer, the victims saw [Fuentes], through the police station window, being processed. *Id*. at 58. During this encounter, none of the victims could positively identify [Fuentes]. Later that evening, a photo array was shown to the other victim, Mr. Fehl, and he positively identified [Fuentes] as the shooter. *Id*. at 63-66.

On July 17, 2007, defense counsel filed a motion to suppress the in-court identification based on the three witnesses who were not able to identify [Fuentes] at the police station as the perpetrator and based on a claim that the photo array shown to the fourth victim was unduly suggestive. The trial court denied the motion at the start of trial on July 25, 2007. Appellant was found guilty of [robbery, 18 Pa.C.S. § 3701(a)(1), aggravated assault, 18 Pa.C.S. § 2702(a)(1), burglary, 18 Pa.C.S. § 3502(a), violation of the uniform firearms act-firearm not to be carried without a license, 18 Pa.C.S. § 6106, and conspiracy, 18 Pa.C.S. § 903], and on October 29, 2007, the trial court sentenced [Fuentes] to an aggregate term of 180 to 360 month's imprisonment.

*Commonwealth v. Fuentes*, 2107 WDA 2007 at 2-3 (Pa. Super., filed June 23, 2009) (mem. op.). On appeal, this Court affirmed Fuentes's judgment of sentence and the Pennsylvania Supreme Court denied allocatur on December 1, 2009. *See id*.; *Commonwealth v. Fuentes*, 985 A.2d 218 (Pa. 2009) (Table).

On September 1, 2010, Fuentes filed a *pro se* PCRA petition. Counsel was subsequently appointed and directed to file an amended PCRA petition. On March 12, 2013, appointed counsel instead filed a **Turner/Finley** no merit letter and requested to withdraw. After reviewing the record and the no-merit letter, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss. Fuentes filed a response to the PCRA court's notice on March 27, 2013. The court entered a final order and allowed counsel to withdraw on May 13, 2013. This timely *pro se* appeal followed.

On appeal, Fuentes raises a staggering 22 allegations[2] of ineffective assistance of counsel. **See** Appellant's Brief, at 4-7.

We review the lower court's denial of a PCRA petition as follows. "On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d

_____

[2] "While criminal defendants often believe that the best way to pursue their appeals is by raising the greatest number of issues, actually, the opposite is true: selecting the *few most important issues* succinctly stated presents the greatest likelihood of success." **Commonwealth v. Robinson**, 864 A.2d 460, 480 n.28 (Pa. 2004) (citation omitted; emphasis added). This is because "[l]egal contentions, like the currency, depreciate through over issue." **Id**. (quoting Robert H. Jackson, "Advocacy Before the United States Supreme Court," 25 Temple L.Q. 115, 119 (1951)); **see also**, Ruggero J. Aldisert, J. "Winning on Appeal: Better Briefs and Oral Argument," 129 (2d ed. 2003) ("When I read an appellant's brief that contains more than six points, a presumption arises that there is no merit to *any* of them.") (emphasis in original).

339, 345 (Pa. 2013) (citation omitted), *cert. denied*, **Edmiston v. Pennsylvania**, 134 S. Ct. 639 (2013). "[Our] scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level." **Commonwealth v. Koehler**, 36 A.3d 121, 131 (Pa. 2012) (citation omitted). In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 PA.CONS.STAT.ANN. § 9543(a)(2). These issues must be neither previously litigated nor waived. **See** 42 PA.CONS.STAT.ANN. § 9543(a)(3). "[T]his Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Spotz**, 18 A.3d 244, 259 (Pa. 2011) (citation omitted).

To determine whether the PCRA court erred in dismissing Fuentes's claims of ineffectiveness of counsel, we turn to the following principles of law.

> In order for Appellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place … Appellant must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

**Commonwealth v. Johnson**, 868 A.2d 1278, 1281 (Pa. Super. 2005).

Moreover, "[w]e presume counsel is effective and place upon Appellant the burden of proving otherwise." ***Commonwealth v. Springer***, 961 A.2d 1262, 1267-1268 (Pa. Super. 2008). "This Court will grant relief only if Appellant satisfies each of the three prongs necessary to prove counsel ineffective." ***Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007). Thus, we may deny any ineffectiveness claim if "the evidence fails to meet a single one of these prongs." ***Id***., at 321.

Our review of Fuentes's brief reveals that several of the 22 issues are waived or abandoned on appeal. We will address these claims *seriatim*.

Fuentes first argues that all prior counsel were ineffective for failing to request the preliminary hearing transcripts. The primary flaw of this argument is Fuentes's failure to support his claim with *any* evidence proving that counsel did indeed fail to request the preliminary hearing transcripts. Even if we were to assume prior counsel did not request the preliminary hearing transcript as Fuentes claims, Fuentes fails to state with specificity the manner in which he was prejudiced by this omission. Although Fuentes alludes to "conflicting and inconsistent statements that took place during trial," Appellant's Brief at 10, he does not cite a single inconsistent or conflicting statement supporting his claim. As Fuentes has failed to provide this Court with any specific instances of conflicting testimony or evidence, we cannot establish whether Fuentes suffered any prejudice. Therefore, this claim fails.

The next two issues Fuentes raises on appeal concern the alleged failure of all prior counsel to adequately contest the allegedly suggestive photo array at the police station.[3]  Trial counsel filed a motion to suppress the photo array identifications, and the trial court rejected that motion after argument prior to trial.  *See* N.T., Jury Trial Vol. I, 7/25/07 at 3-24.  The fact that counsel's arguments were ultimately deemed by the trial court to be unavailing does not render counsel's performance deficient.  Moreover, the record reflects that counsel cogently argued the claims Fuentes now raises on appeal regarding suppression of the police station identifications before the trial court.  Accordingly, we do not find counsel to have been ineffective in this regard.

Fuentes next claims that all prior counsel were ineffective in failing to object to witness Cliff Crotteau's in-court identification of Fuentes.  Fuentes argues that the in-court identification lacked an independent basis and was therefore unreliable.  Although Fuentes provides no legal support for his claim, we nonetheless find this argument to be unavailing.  "An independent basis is established when 'the in-court identification resulted from the

_____

[3] To the extent that Fuentes argues counsel was ineffective for failing to adequately contest the in-person "show up" identification at the police station, this argument is meritless.  As previously noted, the victims were unable to identify appellant when they saw him at the police station.  Therefore, no identification took place and suppression was not warranted.  The only positive identification of note occurred when the victim, Richard Fehl, identified Fuentes through a photo array.

criminal act and not the suggestive [identification procedure].'" ***Commonwealth v. Davis***, 17 A.3d 390, 394 (Pa. Super. 2011) (citation omitted).

Here, Fuentes points to no evidence to suggest that Crotteau's in-court identification was the result of suggestive police techniques, such that an independent basis for the identification was necessary. Moreover, Crotteau testified that he recognized Fuentes as the gunman from the burglary because "he was in my face." N.T., Trial Vol. I, 7/5/07 at 116. As the in-court identification had a sufficient independent basis, counsel had no basis to object or otherwise challenge the identification. This claim fails.

In his fifth claim on appeal, Fuentes argues trial counsel was ineffective for failing to request a jury instruction regarding Ronald Fehl's alleged consumption of drugs on the night the burglary occurred and the possible effect drug use can have on the witness's ability to accurately recall events. Fuentes further argues that counsel was ineffective for failing to acquire and review the victim's medical reports, which indicated the victim admitted to hospital staff that he used marijuana and alcohol on the night in question.

Initially, we note that the record belies Fuentes's claim that trial counsel did not review the victim's medical records. At trial, defense counsel questioned the victim on his use of drugs and alcohol on the evening of the burglary, and confronted the victim with the results of the medical records

from the Allegheny General Hospital. **See** N.T., Jury Trial Vol. II, 7/26/07 at 20-21. The victim admitted that he imbibed alcohol and that drugs were in his system, but despite best counsel's efforts to strongly suggest otherwise, the victim steadfastly denied that he was high on that evening. **See id**. at 21.

It is well-established that "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." **Commonwealth v. Slocum**, 86 A.3d 272, 276 (Pa. Super. 2014) (citation omitted). It is uncontested that the trial court instructed the jury on their duty regarding the credibility of witnesses in general. Under the circumstances, we find that the jury was sufficiently apprised of their duty to weigh the credibility of a witness when confronted with conflicting evidence such that a special instruction was not warranted. Fuentes suffered no prejudice by counsel's failure to request a more specific jury instruction in this regard.

In his sixth claim Fuentes argues that trial counsel was ineffective for failing to challenge the Commonwealth's motion *in limine* to preclude evidence that the victim, Ronald Fehl, possessed a scale allegedly used for weighing drugs. Generally, only relevant evidence is admissible, that is, "if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." **Commonwealth v. Kinard**, 95

A.3d 279, 284 (Pa. Super. 2014) (citation omitted). Here, Fuentes advances no argument as to the relevance of the scale to this case and provides no other admissible grounds for the introduction of the evidence. As there is no merit to the underlying claim on which counsel's ineffectiveness is predicated, this argument fails.

Fuentes next claims that counsel failed to file or otherwise pursue various pre-trial motions on Fuentes's behalf. Fuentes provide no basis to support his claim; rather, it appears this issue is another attempt to argue that trial counsel did not adequately seek to exclude the photo array identification. As we have already determined that counsel's representation was not deficient in this regard, we need not address this claim further.

Fuentes fails to provide any argument for the eighth issue he raises on appeal, regarding counsel's alleged failure to obtain the victim's medical records. Accordingly, we find Fuentes has abandoned this claim on appeal. We additionally note that we have already determined that the record belies this claim. **See** N.T., Jury Trial Vol. II, 7/26/07 at 20-21.

Fuentes next argues that all prior counsel were ineffective for failing to seek suppression of the show up and photo array identification at the police station because counsel was not present. "In Pennsylvania, a defendant has a constitutional right to have counsel present during identification procedures." **Commonwealth v. Kearney**, 92 A.3d 51, 67 (Pa. Super. 2014) (citation omitted). "However, this right is triggered by the arrest of

the accused." *Id*. (citing *Commonwealth v. DeHart*, A.2d 656, 665 (Pa. 1986) ("To extend the Sixth Amendment right to counsel during photographic identification proceedings to any person merely suspected of a crime would be an unreasonable burden on law enforcement officials and on the taxpayer, who in many instances must ultimately underwrite the cost of such representation.").

Here, Fuentes fails to establish that he was formally arrested prior to the police station show up, and not, as the Commonwealth contends, merely detained for investigation. At this point, Fuentes was not charged with any crime and no indictment had been filed. "Appellant is not entitled to constitutional relief based on mere unsupported speculation." *Kearney*, 92 A.3d at 67 (citing *Commonwealth v. McCoy*, 975 A.2d 586, 590 (Pa. 2009) (holding right to counsel attaches at initiation of adversary judicial proceedings, generally at arraignment)). Moreover, as was done here, allegedly suggestive identification procedures may be challenged through the vehicle of a motion to suppress the evidence. Fuentes's argument that all prior counsel were ineffective for failing to raise this claim must therefore be rejected.

The tenth claim Fuentes raises on appeal pertains to trial counsel's failure to object to the allegedly perjured trial testimony of Detective Scott Scherer, regarding the number and location of the tattoos Fuentes had on the night of the crime. From what we can gather from Fuentes's rambling

argument, Fuentes claims that he did have tattoos on his hands on the night the burglary occurred, but that Detective Scherer did not note tattoos on the perpetrator's hands in his police report. When questioned regarding the tattoos Fuentes had on his hands at the time of trial, Detective Scherer testified that "[t]hose would have been most noticeable and those would have been documented [in his report]." N.T., Jury Trial Vol. II, 7/26/07 at 126. Notably, Detective Scherer did not emphatically state that he *did* note hand tattoos in his report. Simply put, we find no evidence that Detective Scherer testified falsely, and therefor can discern no basis on which trial counsel could have objected to this testimony.

Fuentes next argues trial counsel was ineffective for failing to question a juror who admitted she was acquainted with Officer Erica Miller following her testimony at trial. After Officer Miller's testimony, juror number 7 indicated to the court that she realized that she went to high school with Officer Miller's brother and that, as a result, her ability to be impartial was compromised. **See** N.T., Jury Trial Vol. II, 7/26/07 at 96-97. Thereafter, juror number 7 was excused by the court and an alternate was appointed. **See id**. at 99. The trial court quickly remedied the situation. Fuentes suffered no prejudice—trial counsel had no reason to question the juror after her dismissal. This claim fails.

Insofar as Fuentes provides no argument in support of issue number 12, we find that he has abandoned this claim.

In issue number 13, Fuentes alleges that trial counsel was ineffective for failing to seek the trial court's recusal or other remedies for perceived trial court bias. Other than mere conjecture, Fuentes provides no concrete support or citations to the record to support his claim of trial court impartiality or prejudice. He fails to provide any support for his bald claim that the trial court's actions in some way deprived Fuentes of a fair trial. "[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims." *Commonwealth v. Charleston*, 94 A.3d 1012, 1024 (Pa. Super. 2014) (citation omitted). Accordingly, this claim is without merit.

Fuentes next argues that trial counsel was ineffective for failing to file post-sentence motions. Fuentes fails to cite any pertinent legal authority in support of his claim in violation of Pa.R.A.P. 2119(b). Moreover, Fuentes notably fails to argue that any post-sentence motion would have been of merit. Fuentes fails to establish that he was prejudiced by counsel's failure to file such motions. *See Commonwealth v. Reaves*, 923 A.2d 1119, 1132 (Pa. 2007) (defendant alleging ineffective assistance of counsel for failure to file post-sentence motions is not relieved of the burden of establishing prejudice). Accordingly, this claim fails.

In issue number 15, Fuentes argues that pre-trial counsel was ineffective for failing to communicate a plea offer. Fuentes provides no support for his self-serving claim that a plea deal was offered by the

Commonwealth prior to trial, and we find no evidence in the certified record that a deal was ever offered. Counsel cannot be deemed ineffective for failing to communicate a plea deal where none existed. This argument is meritless.

In his next claim, Fuentes argues that trial counsel was ineffective for instructing him to retake the stand on redirect in order to testify that he had been incarcerated since his arrest. Fuentes argues that "[t]o purposely place Fuentes on the stand to admit that he had been locked up for two and a half years on these charges was very prejudicial." Appellant's Brief at 43. The record reveals that trial counsel did elicit testimony from Fuentes that he had been incarcerated in Allegheny County Jail since he was arrested on February 18, 2005. *See* N.T., Jury Trial Vol. II, 7/26/07 at 115-116. He also questioned whether inmates had access to tattoo equipment in prison, to which Fuentes responded, "No, sir." *Id*. at 116. Counsel's questioning clearly aimed to relay to the jury that Fuentes had the hand tattoos at the time the burglary took place and thus impeach police and the victims who did not note hand tattoos on the perpetrator of the burglary. As counsel clearly had a strategic basis for eliciting this testimony from Fuentes on redirect, Fuentes's claim of ineffective assistance of counsel in this regard is meritless.

Insofar as Fuentes provides no argument in support of issue number 17, we find that he has abandoned this claim.

Fuentes argues in issue 18 that all prior counsel were ineffective for failing to contest the in-court identification by witnesses Amanda Hippensteel and Shannon O'Kelley. Fuentes argues that the witnesses' identifications were tainted by the suggested police station show up. This claim is belied by the record. Both Hippensteel and O'Kelley testified that they were unable to see Fuentes clearly at the police station and thus were unable to identify him at that time. Shannon O'Kelley testified that from her vantage point at the station, the appellant's back was facing her and she was unable to identify him. **See** N.T., Jury Trial Vol. I, 7/25/07 at 76-77. Amanda Hippensteel similarly testified that she was unable to identify the appellant at the police station given her vantage point. **See id**. at 95-97.

As no identification occurred at the police station, we fail to see in what manner the witnesses' in-court identifications were compromised. More importantly, both witnesses testified that they were able to identify Fuentes based upon their clear observations of Fuentes as the perpetrator of the burglary. Thus, we find a sufficient independent basis existed for the in-court identifications. **See Davis**, 17 A.3d at 394 ("An independent basis is established when 'the in-court identification resulted from the criminal act and not the suggestive [identification procedure].'" ). As this claim is without merit, counsel cannot be deemed ineffective for failing to contest the identifications on this ground.

Fuentes next claims that trial counsel was ineffective for failing to object to allegedly misleading remarks made by the Commonwealth during closing. The citations to the transcript Fuentes provides in his appellate brief, however, do not correspond to the closing arguments made at trial. Given that Fuentes has failed to provide accurate record citations to the prosecutor's allegedly improper remarks, we are unable to analyze Fuentes claims. Accordingly, this claim is waived. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) ("We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived.").

Fuentes next argues that trial counsel was ineffective and generally unprepared for trial. In advancing this argument, Fuentes relies generally upon the myriad allegations of ineffective assistance of counsel detailed in his brief. As we find all 22 of these claims to be without merit, this general claim, too, must fail.

Insofar as Fuentes provides no argument in support of issue number 21, we find that he has abandoned this claim on appeal. As the argument advanced in support of issue number 22 merely rehashes, *ad nauseam*, Fuentes's many qualms with the so-called police "show up" and photo array identifications, we will not address this further.

In sum, none of Fuentes's 22 claims of ineffective assistance of trial counsel merit relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/29/2014