J-S52009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CLAYTON LEON HALLETT, | |
| Appellant | No. 465 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 16, 2018
In the Court of Common Pleas of Tioga County
Criminal Division at No(s): CP-59-CR-0000414-2016

BEFORE:  BENDER, P.J.E., MCLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: OCTOBER 17, 2018**

Clayton Leon Hallett appeals from the judgment of sentence of an aggregate term of 7 to 14 years' incarceration, imposed after a jury convicted him of various offenses including three counts of aggravated indecent assault. On appeal, Appellant claims that he is entitled to a new trial based on prejudicial remarks that the trial court made during his trial, and conduct and comments by the court at a post-trial hearing.  After careful review, we affirm.

The facts of Appellant's underlying convictions are not pertinent to the issues he raises on appeal.  We only note that Appellant was convicted, following a two-day jury trial in December of 2017, of three counts of aggravated indecent assault, and one count each of showing sexual activity

_____

[*] Retired Senior Judge assigned to the Superior Court.

or videos to a minor, indecent assault, and corruption of a minor. Appellant filed a post-trial motion, alleging that he had discovered that one of the jurors knew the victim in this case, K.C. On February 16, 2018, the court conducted a hearing on Appellant's motion, after which the court denied it. That same day, the court sentenced Appellant to the aggregate term stated *supra*.

Appellant filed a timely notice of appeal. He also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a short Rule 1925(a) statement on May 17, 2018. Herein, Appellant raises two issues for our review:

1) Whether the trial court erred in making comments throughout the trial on Appellant's counsel['s] questions and in making *sua sponte* remarks to the jury which caused prejudice to Appellant?

2) Whether the trial [court] erred in dismissing Appellant's witness in [the] post[-]trial motion hearing *sua sponte* and in threatening counsel with a report to a higher authority?

Appellant's Brief at 5.[1]

In both of Appellant's issues, he argues, *inter alia*, that the trial court made improper remarks that prejudiced him. Our Supreme Court has recognized that,

[t]he law is clear that not every unwise or irrelevant remark made in the course of trial by a judge constitutes grounds for a mistrial and that a new trial is required only where the remark is prejudicial. Prejudice will be found only where the remark is of such a nature, or delivered in such a manner, that it may reasonably be held to have deprived the accused of a fair and

---

[1] We reordered Appellant's issues to address them in the order in which he presents them in the Argument section of his brief.

impartial trial.  ***Commonwealth v. England***, … 375 A.2d 1292 ([Pa.] 1977).  As we noted in ***England***:

> While we do not condone a display of impatience by a trial judge, even where he may have been provoked by counsel's dilatory tactics, we recognize that judges are also subject to the failings of human beings and cannot be expected to be devoid of emotion in the trying or vexing situations they may be called upon to confront.

*Id.* at … 1300.

***Commonwealth v. Jones***, 683 A.2d 1181, 1191 (Pa. 1996).

Here, Appellant initially takes issue with three comments by the court during defense counsel's cross-examination of the victim, K.C.  Specifically, the court asked counsel, "Anything else, ma'am?" and, shortly thereafter, the court again asked counsel, "Are you finished?"  N.T. Trial, 12/6/17, at 136, 137.  Later, the court interjected, "Ma'am, that's the third time you've asked that in the last five minutes."  *Id.* at 138.  Appellant argues that these three comments by the judge "could have shown the jury a prejudice against defense counsel and[,] thus[,] against [Appellant]."  Appellant's Brief at 9.  More specifically, he avers that "these three comments from the judge swiftly portray[ed] a bias against [Appellant] and for the victim[,] who [was] being cross[-]examined by counsel at the time."  *Id.*

Appellant's argument is unconvincing.  As the trial court explains, its "comments to counsel … during the trial … were intended to move the trial along and require counsel to comply with the Rules of Evidence."  Trial Court Rule 1925(a) Order, 5/17/18, at 1.  Moreover, even if we regarded the court's remarks as demonstrating its impatience with defense counsel, the court's

- 3 -

statements were not so extreme as to deprive Appellant of a fair trial. Notably, Appellant does not offer any meaningful discussion of precedential case law that would support his argument to the contrary. Instead, he improperly cites an unpublished memorandum decision by this Court,[2] and then simply sets forth the following sentence from **Commonwealth v. Kearney**, 92 A.3d 51 (Pa. Super. 2014):

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

Appellant's Brief at 9 (quoting **Kearney**, 92 A.3d at 61). Appellant offers no analysis of the **Kearney** decision, nor any explanation of why it supports his claim that a new trial is warranted in this case. Consequently, he has failed to demonstrate that he is entitled to such relief.

Appellant next challenges an instruction provided *sua sponte* to the jury by the court during the testimony of K.C. As context for that instruction, and Appellant's prejudice argument, we explain the following. During cross-

---

[2] **See** 210 Pa. Code § 65.37 (Superior Court Internal Operating Procedure 65.37 stating: "An unpublished memorandum decision shall not be relied upon or cited by a Court or party in any other action or proceeding, except that such a memorandum decision may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel, and (2) when the memorandum is relevant to a criminal action or proceeding because it recites issues raised and reasons for a decision affecting the same defendant in a prior action or proceeding. When an unpublished memorandum is relied upon pursuant to this rule, a copy of the memorandum must be furnished to the other party and to the Court.").

examination of K.C., defense counsel asked her about the fact that, "according to the police investigation report, [K.C. had] told [her] mother that [she] had to give [Appellant] a blow job[.]"  N.T. Trial, 12/6/17, at 114.  K.C. replied, "I didn't say that."  *Id.*  The following exchange then occurred:

> [Defense Counsel]: Okay; it's … in the police report.  You didn't say it?
>
> [K.C.]: Then something must have gotten mixed up --
>
> [Defense Counsel]: -- okay --
>
> [K.C.]:  -- because I didn't meant to say it -- if it was switched up along three different people's words.
>
> THE COURT: I guess this is a good point, Members of the Jury, to remind you of the blue car.[3]  Just because the question[] [is] asked, if the witness says no, you have to put that out of your mind.

*Id.* at 115.

Then, on the second day of trial, during the jury's deliberations, the jury asked to see the police report to resolve a question about the oral sex that

---

[3] During its opening instructions to the jury, the court stated:

> The questions, which the attorneys put to witnesses, are not, themselves, evidence.  It is the answers of witnesses which provide evidence.  You should not assume or guess that a fact is true merely because one of the attorneys ask a question which assumes or suggests that fact is true.  If, for instance, the attorney says to a witness: well, isn't it true that the car was blue, and the witness says no, then you can't assume the car was blue.  The only reason you could make a finding of fact that the car was blue is if some other witness, whom you believe, testified that the car was blue or perhaps, you're shown a photograph of a car, which you believe is blue.

N.T. Trial, 12/6/17, at 4-5.

was referenced in that report. *See* N.T. Trial, 12/7/17, at 81, 86. In response to the jury's question, the court read the following sentence from the police report: "K.C. told her mother that [Appellant] didn't have intercourse with her, but did do oral and made her watch porn." *Id.* at 86. The court also informed the jury that the report was "a synopsis by [a police officer] of his conversation with [K.C.'s] mother." *Id.* at 87. The jury foreperson then stated that, "there was a question about whether oral sex was performed on [Appellant]," to which the court responded, "Okay, there is no testimony in this case, to my recollection, that oral sex was performed." *Id.* The jury then exited the courtroom, and the court asked counsel if there was any objection to the instruction provided, to which the Commonwealth and defense counsel both responded no. *Id.* at 87-88.

Appellant now argues on appeal that "[t]he courts [*sic*] *sua sponte* interjection" during the cross-examination of K.C. "caused prejudice and confusion with the jury[,] as evidenced by their request during deliberations for the police report surrounding the issue[,] which counsel was raising in [her] cross[-]examination of the victim." Appellant's Brief at 10.

Initially, we conclude that Appellant waived this claim by not objecting to the court's *sua sponte* instruction during the cross-examination of K.C. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In any event, we would discern nothing improper about the court's statement to the jury reminding it of the instruction it had provided at the outset of the trial, to which defense counsel

also did not object. Additionally, the record demonstrates that any purported confusion caused by the court's remark during the cross-examination of K.C. was resolved by the court when the jury asked its question during deliberations. Defense counsel did not object to the instruction the court provided in response to that question. Therefore, Appellant would not be entitled to relief, even had he preserved this claim for our review.

In Appellant's second issue, he challenges the trial court's conduct and remarks during the hearing to dispose of his post-trial motion, in which he claimed to have discovered that one juror knew K.C. and did not disclose this fact during jury *voir dire*. At the hearing, Appellant called that juror to the stand, as well as the juror's husband, in an attempt to elicit testimony that the juror (hereinafter, "the wife") knew K.C., and that her husband (hereinafter, "the husband") had told that fact to defense counsel. However, during the testimony of the wife, she repeatedly denied that she knew or recognized K.C. When defense counsel's further questioning did not elicit a different response, the court interjected, and once again asked the wife if she had recognized K.C. at trial. N.T. Post-Trial Hearing, 2/16/18, at 7. The wife reiterated that she had not. **Id.** The court then excused the witness. **Id.** When defense counsel objected, stating that she was not finished examining the witness, the court replied:

> THE COURT: Yes, you were, ma'am. As far as I'm concerned, the [c]ourt has gone way beyond what it should have done in allowing you to question jurors about their conduct as jurors. This woman has testified, clearly and unequivocally, that she didn't know who

K.C. was; she didn't recognize her during the trial; and that's all there is to it; and that's all I want to hear. Call your next witness.

*Id.*

Defense counsel then called the husband to the stand. Similar to the wife, the husband denied that wife knew K.C., and also denied that he had told defense counsel that his wife recognized K.C. *Id.* at 9-13. Nevertheless, defense counsel continued to question the husband about his wife's knowledge of K.C. and what he ostensibly told defense counsel related thereto. The Commonwealth ultimately objected, pointing out that the wife had already "testified that she did not know [K.C.]" *Id.* The court and defense counsel then had the following exchange:

> THE COURT: Objection's sustained. Plus [the husband is] already -- he [is] denying ma'am. And I got to tell you ma'am, I'm -- I'm just about to this point now where I'm thinking about reporting this to a higher authority. I don't understand what you're doing here. This man has now denied, for the last five minutes, everything you've asked him; and I'm not sure where you're going here.
>
> [Defense Counsel]: Your Honor, [Appellant] is guaranteed, by the Constitution, … a trial by an impartial juror --
>
> THE COURT: -- I understand that, ma'am. The question is, the juror came in, said that she didn't know the victim at the time and didn't recognize [her]. You're now trying to impeach her with the testimony of her husband --
>
> [Defense Counsel]: -- yes --
>
> THE COURT: -- who you ask: didn't you tell me something? And he says: no, I didn't tell you that. Now, I don't know how long I'm going to let you continue to harass this man.
>
> [Defense Counsel]: Your Honor, I'm not harassing anyone; this is what he --
>
> THE COURT: -- ask your next question.

- 8 -

[Defense Counsel]: Okay. So … I have no further questions.

THE COURT: Thank you sir, you're excused; you're free to leave.
Next witness, please.

*Id.* at 13-14.

Appellant now contends that he was prejudiced by the court's *sua sponte* excusing the wife from the stand because, "[b]y doing so[,] the court shut off what [A]ppellant asserts would have been fertile ground for evidence concerning the [wife's] knowledge and awareness of K.C...." Appellant's Brief at 11-12. The record clearly belies Appellant's prejudice argument, as the wife repeatedly and adamantly denied recognizing K.C. or having any knowledge of her. Therefore, even if it was improper for the court to end counsel's examination of that witness, Appellant has not demonstrated that any prejudice resulted.

The same is true for Appellant's claim regarding defense counsel's exchange with the court during the husband's testimony. Appellant maintains that the court "effectively intimidate[d] and shut[] off counsel['s] proceeding with her presentation of evidence for her motions." Appellant's Brief at 12. According to Appellant, defense "counsel was so flustered and taken aback by the court's position … that she failed to call [Appellant's] wife[,] who would have provided further information bolstering the position set forth in [Appellant's] motion." *Id.* at 13. Appellant avers that "the interaction of the judge to counsel denied [] [A]ppellant [his] right to due process and a fair hearing on the post-trial motions and impacted his sixth amendment right to effective counsel." *Id.* at 14.

- 9 -

We disagree. While it is apparent that the court was frustrated - and even angry - with defense counsel's continuous pursuit of testimony that the wife and husband seemed unwilling to provide, we discern no prejudice caused to Appellant. Appellant merely speculates that defense counsel was 'too flustered' to call another witness, and it is apparent that the court provided counsel the opportunity to do so after it excused the husband from the stand. Moreover, this Court stated in **Kearney** that,

> judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible…. Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as [] judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

**Commonwealth v. Kearney**, 92 A.3d 51, 61 (Pa. Super. 2014) (citations and emphasis omitted). Thus, based on this record, we do not agree with Appellant that the court's remarks to defense counsel during the testimony of the husband caused Appellant prejudice at the post-trial hearing.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2018