J-S05024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVON LAVAR WELLINGTON | : | |
| | : | |
| Appellant | : | No. 1414 MDA 2019 |

Appeal from the Judgment of Sentence Entered June 20, 2019,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0005951-2018.

BEFORE: SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: APRIL 13, 2020**

Devon Wellington appeals from the aggregate judgment of sentence of six months of county intermediate punishment, a year of county supervision, and fines totaling $1,125. He challenges the sufficiency of the evidence to convict him on three counts of driving under the influence.[1] We affirm.

The trial court summarized the facts of the case as follows:

> On May 20, 2018, Officer Yeager of the Harrisburg City Police Department, was dispatched to a car crash at approximately 1:14 a.m. The caller had reported that two parked vehicles had been struck by another vehicle, which fled the scene. Upon Officer Yeager's arrival, he did find the struck vehicles parked in the 2300 block of North Sixth Street. Subsequently, Officer Yeager interviewed both owners of the vehicles involved in the crash. They described the vehicle that had hit their respective cars as crossing the

---

[1] **See** 75 Pa.C.S.A. § 3802(a)(1), 75 Pa.C.S.A. § 3802(b), and 75 Pa.C.S.A. § 3802(d)(1). The trial court also convicted Wellington of other, lesser offenses that are not in question on appeal.

double yellow line and entering the oncoming lane of traffic which resulted in the first vehicle being struck in the front drivers side and then striking the second vehicle parked directly behind it. After striking the two parked vehicles, the owners described that the driver of the vehicle made a hard right hand turn over the curb through a grassy hill, where a front bumper and grill assembly for a blue Buick sedan was found.

At approximately 1:50 that same morning, [Wellington] places a call to 911 relaying that his Buick sedan was stolen two blocks north of the crash scene. Officer Yeager ends up responding to this dispatch call because he believed it was related to the crash scene he was already investigating. After arriving to speak with [him], Officer Yeager described [Wellington] as having heightened emotions, stumbling around, pacing back and forth, and [he] lacked any kind of balance. Further, Officer Yeager identified [Wellington] as "very obviously intoxicated: red eyes, dilated pupils, heavy eyelids, slurred speech, and smelled heavily of an alcoholic beverage."

When Officer Yeager began asking [Wellington] basic questions about the stolen vehicle, he provided four different renditions about that evening. At some point during the Officer's questions, [Wellington] pulls a key to his stolen Buick out of his pocket. This key is later confirmed to be the key belonging to the stolen Buick. Officer Yeager also travels to [Wellington's] home where he speaks to [Wellington's] girlfriend. She informs Officer Yeager that [Wellington] hadn't been home all night. Based on this information, Officer Yeager arrests [Wellington] for public drunkenness. [Wellington] is then transported to the booking center. [Wellington] consents to a blood draw, and is found to have a BAC level of .141 and the presence of a cocaine compound.

Officer Yeager continues his search in the area for the stolen vehicle and locates it approximately one block away from [Wellington's] home. The vehicle had damage that was consistent with the car crash. After locating [the] vehicle, Officer Yeager then charges [Wellington] with DUI.

Trial Court Opinion, 10/22/19, at 1-3 (citations to the record omitted).

Following a non-jury trial, the court convicted Wellington on all charges, including three, separate counts of driving under the influence. The three DUIs were based on (1) general impairment, (2) high rate of alcohol, and (3) having metabolites from a controlled substance (cocaine) in the bloodstream. The trial court merged these DUI convictions for sentencing purposes. Wellington filed a post-sentence motion, which the trial court denied.

He then timely appealed to this Court.

On appeal, Wellington attacks all three of his DUI convictions as follows:

> Whether the Commonwealth failed to present sufficient evidence to sustain [his] convictions, where the Commonwealth presented no substantive evidence that [Wellington] was under the influence of alcohol or a controlled substance at the time of driving his vehicle.

Wellington's Brief at 4.

Wellington argues the Commonwealth presented insufficient evidence that he was DUI, because he introduced "credible evidence . . . demonstrating that [he] consumed alcohol and cocaine after [he] ceased operating his vehicle." *Id.* at 10. First, he claims the Commonwealth failed to prove that he consumed any cocaine prior to driving and wrecking his car into the parked vehicles. *See id.* at 14. Second, Wellington argues the Commonwealth did not prove that he had a high rate of alcohol while driving his vehicle, because "the record is absent sufficient evidence to support the Commonwealth's allegation that Wellington, before he operated his vehicle, [had] consumed enough alcohol to elevate his BAC to between .10% and .16%." *Id.* at 15.

And third, he suggests the Commonwealth did not prove he had consumed enough alcohol to render himself incapable of safe driving.

The crux of all three of these theories is Wellington imbibed intoxicants *after* wrecking his car and returning home. He relies upon the testimony of his girlfriend to support his version of events. She testified that Wellington drank two beers and did cocaine between the car wreck and when Officer Yeager responded to Wellington's 911 call. Because his girlfriend provided the only in-court account of Wellington's actions before Officer Yeager arrived, Wellington believes the Commonwealth failed to prove its case beyond a reasonable doubt.

We disagree. His girlfriend's contradictory out-of-court statement to Office Yeager, coupled with other evidence was sufficient to convict Wellington.

Evidence is sufficient to support a criminal conviction if "it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence . . . is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." *Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa.Super. 2004). We "view the evidence in the light most favorable to the [Commonwealth and give it] the benefit of all reasonable inferences to be drawn from the evidence." *Id.*

Critically, when reviewing a sufficiency claim following a bench trial, this Court must treat the trial judge's decision with the same deference that we

would afford a jury's verdict. Thus, the trial judge, "while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." ***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa.Super. 2014).

As this Court recently explained:

> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. Evidence is weak and inconclusive when two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances.

***Commonwealth v. Akhmedov***, 216 A.3d 307, 322 (Pa.Super. 2019), *appeal denied*, ___ A.3d ___, 2020 WL 548091 (Pa. 2020) (citations and some punctuation omitted).

After examining the evidence that the Commonwealth offered through the testimony of Officer Yeager and toxicologist Jolene Bierly, the trial court convicted Wellington of three types of DUI. The statute in question provides, in relevant part:

**(a) General impairment.**--

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving,

> operating or being in actual physical control of the movement of the vehicle.
>
> \* \* \* \* \*
>
> (b) **High rate of alcohol.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.
>
> \* \* \* \* \*
>
> (d) **Controlled substances.**--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> > (1) There is in the individual's blood any amount of a:
> >
> > > (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act;
> > >
> > > (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or
> > >
> > > (iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802.

In explaining its decision to convict Wellington under these three subsections, the trial court relied heavily upon the circumstantial evidence that arose from the wreck that Wellington caused, as well as his confession to Officer Yeager that he had been drinking. The court opined as follows:

We believe that the Commonwealth presented sufficient evidence to prove that the defendant was driving under the influence of alcohol and controlled substances.

"Circumstantial evidence is, in the abstract, nearly, if not quite as strong as positive; in the concrete, it may be much stronger." **Commonwealth v. Harman**, 4 Pa. 269, 270 (1846). [Wellington's] sole argument on appeal is that the Commonwealth failed to present [direct] evidence proving that he was under the influence of alcohol or a controlled substance at the time of driving his vehicle. In the case at hand, the Commonwealth very clearly proved that on the night of the incident [Wellington] had been both under the influence of alcohol and drugs. With blood results showing a BAC level of .141 and the presence of cocaine, it is difficult to argue otherwise. However, [Wellington] argues that while the Commonwealth may have proven that he was under the influence of those substances, the Commonwealth failed to prove that he had been driving while under the influence of those substances.

As cited above, the Court in **Harman** held that circumstantial evidence can be just as strong, if not stronger, than other forms of evidence. Here, there is a plethora of circumstantial evidence that ties [Wellington] to [the] crime of driving under the influence. First, at the scene of the crash, Officer Yeager found debris left from the vehicle that had crashed into the two parked vehicles. The leftover debris was concluded to have come from a blue Buick sedan; the same exact color and model [Wellington] had reported as "stolen." After speaking with [him] on that night, Officer Yeager described [Wellington] as stumbling around, pacing back and forth, and lacking any kind of balance. Based upon Officer Yeager's experience he described [Wellington] as being very obviously intoxicated: red eyes, dilated pupils, heavy eyelids, slurred speech, and smelled heavily of an alcoholic beverage. Further, [Wellington] had presented the officer with approximately four different renditions of how the evening progressed. Secondly, [Wellington] provided Officer Yeager with a key to his car that unlocked the car and was able to start the car. Finally, all of the damage found on [Wellington's] car was consistent with car parts located at the scene of the crash.

> In viewing all of these facts in the light most favorable to the Commonwealth, we believe that sufficient evidence was presented to find that [Wellington] had driven while being under the influence.

Trial Court Opinion, 10/22/19, at 3-5.

We agree with the trial court. All of the circumstantial evidence, which the trial court found to be true, provides sufficient proof of each element of subsection (a)(1) of Section 3802 of the Vehicle Code.

Wellington's arguments to the contrary are unavailing. He first asserts that "the Commonwealth failed to prove that [he] unlawfully drove or was in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol that rendered him incapable of driving safely." Wellington's Brief at 9. To support this claim Wellington provides an argument as to each of his convictions. We address each separately.

With regard to section 3802(a)1), Wellington argues that "[m]erely being involved in a car accident proves nothing definitive about [his] capability of operating his vehicle safely." Wellington's Brief at 19. In addition, Wellington cites Officer Yeager's trial testimony that it had been raining "all night long." *Id.*

We agree that the happening of an accident alone is insufficient to establish driving under the influence. However, in making this argument, Wellington ignores the "plethora" of circumstantial evidence found by the trial court to support this conviction. Moreover, rainy weather usually does not cause drivers to cross double, yellow lines to the point that they hit cars

parked along the opposing sidewalk. Finally, even if an act of God had caused this incident, it does not explain why Wellington fled the scene of the accident or falsely reported that his car was stolen.

Hence, Wellington's theory does not comport with "human experience and the laws of nature . . . ." *See Smith*, *supra*. He therefore fails to persuade this Court that the Commonwealth's evidence was so weak or inconclusive that the trial court could not reasonably convict him under 75 Pa.C.S.A. § 3802(a)(1).

We also affirm his convictions under subsections (b) and (d) of Section 3802.

Wellington indicates the Commonwealth produced no direct evidence definitively establishing his BAC at the time he drove his car into the parked vehicles. However, the Commonwealth proved that his BAC was .141 only a few hours after the incident. It also produced evidence that he had metabolites from cocaine in his system.

Under the plain language of subsection (d) any amount of metabolites are sufficient to render one DUI in this Commonwealth. In other words, Pennsylvania is a zero-tolerance jurisdiction for DUI by illicit drugs. Again Wellington responds that the Commonwealth did not provide any direct evidence definitively showing that he did the cocaine prior to driving his car.

The weakness of Wellington's arguments lies in his reliance upon his girlfriend's in-court rendition of events. She testified that, on the morning in question, she and Wellington were together at home. *See* N.T., 6/18/19, at

36. She said that he had two beers and did cocaine while in the house – *i.e.*, **after** he wrecked his vehicle but **before** Officer Yeager responded to his 911 call. **See id.** at 36-37. However, this testimony did not correspond with Officer Yeager's recollection of her statements on the morning in question.[2]

Upon arriving at Wellington's residence, Officer Yeager went:

> on the porch [and] spoke with Ms. Ashley Randall . . . [He] later found out [that she] was Mr. Wellington's girlfriend.
>
> [Officer Yeager] asked [her] about Mr. Wellington's whereabouts and kind of how everything conspired. Maybe she had seen something about the vehicle being stolen. She told [the policeman] that [Wellington] hadn't been home all night and that she didn't know anything further.

**Id.** at 17.

Ms. Randall therefore offered two, conflicting version of events, one at the time of the crimes and one in court. The trial court was "free to believe all, part, or none of the evidence." **Kearney**, 92 A.3d at 64. This freedom to accept or reject evidence allowed the court, as fact-finder, to believe either Ms. Randall's report to Officer Yeager or her inconsistent testimony during Wellington's case-in-chief. Because it convicted Wellington of DUI, the trial court obviously rejected Ms. Randall's in-court story as incredible. Thus, neither Wellington nor this Court may rely upon her in-court statement to conclude that the Commonwealth's evidence of DUI was insufficient.

_____

[2] Wellington did not object to Officer Yeager's testimony regarding what Ms. Randall had said regarding Wellington's whereabouts.

As a matter of fact, according to Officer Yeager, Wellington "hadn't been at home all night and [Ms. Randall] didn't know anything further." N.T., 6/18/19, at 17. Therefore, Wellington's theory of the case collapses. Moreover, although Wellington further argues that that the Commonwealth's expert could not opine if his "BAC was raising or falling when he submitted to a blood draw at 3:14 a.m, " Wellington's Brief at 18, he did not reach a BAC of .141 by drinking two beers at home before Officer Yeager arrived. Nor did he do cocaine in his home between the time he crashed his car and when Officer Yeager arrived, because, as Ms. Randall told Officer Yeager, he "had not been in the house all night."

Because Wellington relayed four versions of events to Officer Yeager and because Ms. Randall apparently lied on the stand to defend her boyfriend, the trial court had a basis to infer that Wellington and Ms. Randall were trying to cover up his crimes. From Wellington's false report of a stolen car onward, the trial court clearly found that Wellington and Ms. Randall were not trustworthy individuals. It therefore reconciled the conflicting versions of the facts against Wellington in light of the unbelievablility of these witnesses and the other evidence that the Commonwealth presented.

Accordingly, we agree with the trial court. There was sufficient evidence from which a finder of fact could rationally conclude that Wellington committed all three types of DUI beyond a reasonable doubt.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/13/2020</u>