J-A12018-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
BRANDON MCCOY :
:
Appellant : No. 976 WDA 2019

Appeal from the Judgment of Sentence Entered May 30, 2019
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014245-2017

BEFORE: KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: FILED JULY 24, 2020

Appellant, Brandon McCoy, appeals from the judgment of sentence

entered in the Allegheny County Court of Common Pleas, following his bench

trial conviction for persons not to possess firearms.[1] After careful review, we

reverse Appellant's conviction, vacate the judgment of sentence, and remand

for resentencing.

The trial court opinion summarized the relevant facts of this case as

follows.

> On August 15, 2017, City of Pittsburgh Detectives were in
> the area of 255 East Ohio Street as part of a buy-bust, drug
> delivery operation wherein Appellant was the target. During
> the course of the operation, the facts of which are irrelevant
> to the matters on appeal, Appellant was arrested in a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

parking lot near a housing complex. After the arrest, police came in contact with Appellant's mother, a resident of the adjacent housing complex. Although Detectives did not observe Appellant either enter or exit the housing complex on August 15, 2017, they did ask Appellant's mother for permission to search her residence, having information that Appellant had previously listed this as his residence. Upon receiving consent, police conducted a search and located a shoebox outside of a second floor bedroom that contained indicia for Appellant and a .380 caliber pistol. The indicia included bank statements, greeting cards and court documents all in [Appellant's name], along with photographs of Appellant. This firearm was subsequently examined by the County Crime Lab and was deemed inoperable in the submitted condition. At trial, the Commonwealth also presented a recording of a call made by Appellant from the Allegheny County Jail, wherein he speaks about a pistol, referencing that it is from high school and doesn't work.[2] The Commonwealth submitted a certified copy of a felony conviction of Appellant's as evidence of him being a person not to possess a firearm.

The defense called Appellant's mother, Bonitta Wilmore, as a witness. Ms. Wilmore testified that she has lived at the apartment for eighteen (18) years, but that Appellant has not lived there since 2012. Although his mother attempted to minimize the amount of time she sees Appellant at her residence, [the trial court concluded] that she serves as a primary caregiver for his four (4) year old son, her grandson, and therefore, has fairly regular contact with Appellant. In fact, this child was present at the apartment on the day of Appellant's arrest and search of the residence.

The second and last witness called by the defense was Appellant's father, Raymond McCoy, who claimed

---

[2] At trial, the Commonwealth submitted the recordings, as well as a transcript, into evidence. (See N.T. Trial, 9/26/18, at 30-31). Although these exhibits are not included in the certified record on appeal, Appellant included a copy of the relevant portion of the transcript in his appellate brief. (See Appellant's Brief at Appendix D). The Commonwealth does not dispute the accuracy of this copy, wherein Appellant referenced the firearm by saying, "Dat shit don't work, that shit was from ... high school." (Id.)

responsibility for the gun. Mr. McCoy, who has not resided in that apartment for ... at least sixteen (16) years, testified that he brought the gun into the residence about fifteen (15) years earlier.

(Trial Court Opinion, filed October 28, 2019, at 2-4) (internal footnotes omitted).

The Commonwealth charged Appellant with persons not to possess firearms, possession of a controlled substance,[3] possession of a controlled substance with intent to deliver ("PWID"),[4] and conspiracy.[5] The court severed the firearms charge, and Appellant entered a negotiated guilty plea for the remaining offenses. Appellant proceeded to a bench trial for the firearms offense, and the court found him guilty. The court conducted Appellant's sentencing hearing on January 3, 2019. At that time, the court sentenced Appellant to forty-five (45) to ninety (90) months' incarceration for the firearms offense. The court also imposed a consecutive term of imprisonment for Appellant's drug offenses. (See N.T. Sentencing, 1/3/19, at 26). Appellant did not file post-sentence motions.

On January 23, 2019, Appellant filed a motion for reinstatement of his right to file post-sentence motions and a direct appeal nunc pro tunc. The

_____

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(30).

[5] 18 Pa.C.S.A. § 903.

court granted Appellant's motion on January 29, 2019, permitting Appellant to file post-sentence motions nunc pro tunc within 30 days of receipt of the trial and sentencing transcripts. On March 12, 2019, Appellant filed a nunc pro tunc post-sentence motion,[6] challenging the sufficiency of the evidence and the sentence imposed. On May 30, 2019, the court granted relief in part. Specifically, the court resentenced Appellant to thirty-three (33) to sixty-six (66) months' incarceration. Again, the court ordered the sentence for the firearms conviction to run consecutive to the sentence for the PWID conviction. (See Order, dated 5/30/19, at 1). On June 20, 2019, the court denied Appellant's remaining sufficiency claims.

Appellant filed a timely notice of appeal on July 1, 2019. On July 11, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on July 31, 2019.

Appellant now raises two issues on appeal:

> Is the evidence insufficient to show that Appellant had knowledge of the presence and location of the firearm or that Appellant had the intent and power to control the firearm?

> Is the evidence insufficient because the Commonwealth failed to present sufficient evidence that Appellant possessed the firearm on August 15, 2017, the date alleged in the criminal information, or any other fixed date within the statutory period?

---

[6] Appellant stated he received the sentencing transcript on February 14, 2019.

(Appellant's Brief at 4).

In his two issues, Appellant contends the trial court based its verdict on speculation, theorizing that Appellant would use the firearm to collect money from drug customers who did not provide prompt payment. Appellant emphasizes the Commonwealth presented no evidence of such a scenario, as the police witnesses' testimony was limited to one transaction where Appellant facilitated the delivery of drugs to an undercover officer. Appellant acknowledges the statements he made on the recorded prison calls, but he maintains the statements are circumstantial evidence limited to his knowledge of the firearm's existence. Appellant insists there is no circumstantial or direct evidence to prove his intent to control the firearm. Absent more, Appellant concludes the Commonwealth presented insufficient evidence to support his firearms conviction. We agree.

Our standard of review for sufficiency claims is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the

above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Tucker, 143 A.3d 955, 964 (Pa.Super. 2016), appeal denied, 641 Pa. 63, 165 A.3d 895 (2017) (quoting Commonwealth v. Hansley, 24 A.3d 410, 416 (Pa.Super. 2011)).

"As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." Commonwealth v. Rahman, 75 A.3d 497, 500 (Pa.Super. 2013) (quoting Commonwealth v. Pettyjohn, 64 A.3d 1072, 1074 (Pa.Super. 2013)).

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the [factfinder] of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

Commonwealth v. Kearney, 92 A.3d 51, 64 (Pa.Super. 2014) (quoting Commonwealth v. Slocum, 86 A.3d 272, 275-76 (Pa.Super. 2014)).

The Uniform Firearms Act provides, in relevant part, as follows:

§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms

(a) Offense defined.—

> (1)   A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).  The Commonwealth is not required to prove the firearm was "operable" to convict a defendant under Section 6105(a)(1). Commonwealth v. Batty, 169 A.3d 70, 77 (Pa.Super. 2017), appeal denied, 645 Pa. 701, 182 A.3d 434 (2018).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession...." Commonwealth v. Jones, 874 A.2d 108, 121 (Pa.Super. 2005).  "Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control." Id.

> Dominion and control means the defendant had the ability to reduce the item to actual possession immediately, accord State v. Jones, 146 Wash.2d 328, 45 P.3d 1062, 1064-65 (2002) (en banc), or was otherwise able to govern its use or disposition as if in physical possession.  See, e.g., People v. Sinclair, 129 Cal.App. 320, 19 P.2d 23 (1933) (finding constructive possession where the defendant was driving an automobile and, upon being stopped by the police, directed his passenger to throw illegal drugs out of the window).  Mere presence or proximity to the contraband is not enough.  Constructive possession can be established by inferences derived from the totality of the circumstances.

Commonwealth v. Peters, ___ Pa. ___, ___, 218 A.3d 1206, 1209 (2019) (emphasis added) (some internal citations omitted).  Further, "knowledge of

the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." Commonwealth v. Parrish, 191 A.3d 31, 37 (Pa.Super. 2018), appeal denied, ___ Pa. ___, 202 A.3d 42 (2019).

Instantly, the trial court found Appellant constructively possessed the firearm:

> In concluding that Appellant ... had constructive possession of the firearm, the [c]ourt found it significant that the indicia for Appellant contained in the shoebox with the gun was dated as recently as 2014. This fact, in combination with the jail phone call, wherein Appellant references that the gun was found in his mother's house; his knowledge that it was presently inoperable; and his close proximity to the residence to which he had access, was not only sufficient to establish his knowledge of the firearm, but his power and intent to control the same. It was clear from the trial testimony that Appellant was a frequent visitor to his mother's residence and had unencumbered access to it, and that Appellant kept a "whole bunch" of items at his mother's residence, including this box.

(Trial Court Opinion at 5-6).

Although the trial court determined Appellant was in "close proximity" to the firearm, the Commonwealth did not offer any evidence to support this finding. Specifically, the testimony from the police witnesses established that Appellant was arrested in a parking lot somewhere outside Ms. Wilmore's apartment complex. The police witnesses did not explain where the arrest occurred in relation to the actual location of Ms. Wilmore's apartment. On this record, it is impossible to conclude that Appellant could reduce the firearm "to actual possession immediately." See Peters, supra.

- 8 -

Likewise, the evidence regarding Appellant's intent to exercise control over the firearm is dubious. Although Appellant's statements from the jail phone call supported the court's finding that Appellant knew about the firearm, we cannot agree that the statements proved the requisite intent. Importantly, Appellant referenced the inoperability of the firearm, as well as the fact that it dated back to his high school days. These statements, combined with the storage of the contraband at Ms. Wilmore's residence, actually demonstrated Appellant's relinquishment of control over the firearm. See Commonwealth v. Heidler, 741 A.2d 213 (Pa.Super. 1999), appeal denied, 563 Pa. 627, 758 A.2d 660 (2000) (explaining defendant gave firearm to passenger before exiting his vehicle, and passenger placed firearm in her purse and remained in vehicle; even if defendant had power to access firearm, factfinder could not logically conclude defendant intended to exercise control over firearm where record demonstrated his intent was to relinquish such control; if defendant intended to retain control of firearm, he would have kept it or not placed it under control of third party).

Moreover, the trial court attempted to justify its verdict by positing as follows:

> Perhaps, and I don't know, I don't need to speculate, but if I had to, it's possible that it was good to have that gun even if it didn't fire just in case you needed it to back up your mule or in case somebody didn't give your mule the money they were supposed to during the drug deal.

(N.T. Trial at 74). In light of Appellant's relinquishment of control, the court was left to infer a reason for Appellant to retrieve the firearm. We cannot agree that the facts adduced at trial were of such a "volume and quality" as to allow this inference and overcome Appellant's presumption of innocence. See Kearney, supra.

We conclude the Commonwealth did not meet its burden in proving constructive possession. See Peters, supra; Parrish, supra. Viewing the evidence in the light most favorable to the Commonwealth, and giving the Commonwealth all the favorable inferences that may be drawn from the evidence, the court erred in determining the Commonwealth established the element of "possession" under Section 6105. See Tucker, supra; Kearney, supra. Accordingly, we reverse Appellant's conviction for persons not to possess firearms. Because our disposition upsets the court's sentencing scheme, we also remand for resentencing. See Commonwealth v. Goldhammer, 512 Pa. 587, 517 A.2d 1280, (1986), cert. denied, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987) (explaining remand for resentencing is proper if appellate court alters overall sentencing scheme).

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/24/2020